CARNEY BATES & PULLIAM, PLLC
Joseph Henry ("Hank") Bates (CA #167688)
hbates@cbplaw.com
Randall K. Pulliam
rpulliam@cbplaw.com
One Cantrell Building
2800 Cantrell, Suite 510
Little Rock, AR  72212
Telephone:  (501) 312-8500
Facsimile:  (501) 312-8505

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Michael W. Sobol (CA #194857)
msobol@lchb.com
Nicole D. Sugnet (CA #246255)
nsugnet@lchb.com
RoseMarie Maliekel (CA #276036)
rmaliekel@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Attorneys for Plaintiffs Napoleon Ebarle, Jeanne
Stamm, Brian Litton, and Reiner Jerome Ebarle

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NAPOLEON EBARLE, JEANNE STAMM, BRIAN LITTON, and REINER JEROME EBARLE on behalf of themselves and all other similarly situated,

Plaintiffs,

v.

LIFELOCK, INC.,

Defendant.

Case No.  3:15-cv-00258

**PLAINTIFFS' NOTICE OF MOTION; MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES**

Date: December 17, 2015
Time: 2:00 p.m.
Courtroom: 15, 18th Floor
Judge: Hon. Haywood S. Gilliam, Jr.

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on December 17, 2015, at 2:00 p.m., in the Courtroom of the Honorable Haywood S. Gilliam, Jr., United States District Judge for the Northern District of California, 450 Golden Gate Avenue, 18th Floor, Courtroom 15, San Francisco, California 94102, Plaintiffs Napoleon Ebarle, Jeanne Stamm, Brian Litton, and Reiner Jerome Ebarle ("Plaintiffs"), will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order:

    a)    Granting Plaintiffs leave to file a Second Amended Class Action Complaint;[1]

    b)    Granting preliminary approval of the proposed Class Action Settlement Agreement ("Settlement") entered into between the parties;[2]

    c)    Provisionally certifying the Class and Subclass as defined in the Settlement;

    d)    Appointing Plaintiffs Napoleon Ebarle, Jeanne Stamm, Brian Litton, and Reiner Jerome Ebarle as Class Representatives of the proposed Class;

    e)    Appointing Hank Bates and Randall K. Pulliam of Carney Bates & Pulliam PLLC and Michael W. Sobol of Lieff Cabraser Heimann & Bernstein LLP as Class Counsel for the proposed Class;

    f)    Approving the parties' proposed notice program, including the proposed forms of notice set forth in the Settlement, and directing that notice be disseminated pursuant to such program;

    g)    Appointing Garden City Group, LLC ("Garden City Group") as Settlement Administrator, and directing Garden City Group to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement;

    h)    Staying all non-Settlement related proceedings in the above-captioned case (the "Action") pending final approval of the Settlement; and

    i)    Setting a Fairness Hearing and certain other dates in connection with the final approval of the Settlement.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the Settlement, including all exhibits thereto, the accompanying Joint Declaration of Hank Bates and Michael W. Sobol ("Joint Decl."), the Declaration of Justice (ret.) Howard B. Wiener ("Wiener Decl."), the argument of counsel, all papers and records on file in this matter, and such other matters as the Court may consider.

---

[1] *See* Exhibit A to the Joint Declaration of Hank Bates and Michael W. Sobol at Exhibit 7.

[2] *See* Exhibit A to the Joint Declaration of Hank Bates and Michael W. Sobol.

1   Dated:  November 4, 2015

2                                                   Respectfully submitted,

                                        By:    /s/ Michael W. Sobol
3                                               LIEFF CABRASER HEIMANN
                                                  & BERNSTEIN, LLP
4                                               Michael W. Sobol (CA #194857)
                                                msobol@lchb.com
5                                               RoseMarie Maliekel (CA #276036)
                                                rmaliekel@lchb.com
6                                               275 Battery Street, 29th Floor
                                                San Francisco, CA  94111-3339
7                                               Telephone:  (415) 956-1000
                                                Facsimile:  (415) 956-1008

8                                               CARNEY BATES & PULLIAM, PLLC
                                                Joseph Henry ("Hank") Bates (CA #167688)
9                                               Randall K. Pulliam
                                                11311 Arcade Drive, Suite 200
10                                              Little Rock, AR 72212
                                                Telephone:  (501) 312-8500
11                                              Fax:  (501) 312-8505

12                                              *Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.      INTRODUCTION ......................................................................................................... 1

II.     OVERVIEW OF THE LITIGATION ........................................................................... 2

III.    THE PROPOSED SETTLEMENT AND SCHEDULE OF EVENTS ................... 5

        A.      Summary of the Settlement Terms................................................................. 5

        B.      Proposed Schedule of Events ......................................................................... 8

IV.     LEGAL ANALYSIS ..................................................................................................... 9

        A.      Applicable Legal Standards ........................................................................... 9

        B.      Certification of the Proposed Settlement Class is Appropriate................. 10

                1.      Rule 23(a) is Satisfied. ................................................................... 10

                        a.      The Class and Subclass are Too Numerous to Permit
                                Joinder. .............................................................................. 10

                        b.      This Action Presents Common Questions of Law or
                                Fact. .................................................................................... 10

                        c.      Plaintiffs' Claims are Typical of Those of the Class
                                and Subclass. ...................................................................... 11

                        d.      Plaintiffs and Their Counsel Will Fairly and
                                Adequately Protect the Interests of the Class
                                Members. ............................................................................ 11

                2.      The Requirements of Rule 23(b)(3) are Satisfied. ........................ 12

                        a.      Common Questions of Law or Fact Predominate ............. 13

                        b.      A Class Action is the Superior Method of
                                Adjudicating this Action ................................................... 13

        C.      Preliminary Approval of the Settlement is Appropriate. .......................... 14

                1.      The Settlement Falls Within the Range of Possible Approval...... 15

                2.      The Settlement is the Product of Arms-Length Negotiations
                        After a Thorough Investigation, Without a Trace of
                        Collusion ........................................................................................ 17

                3.      The Recommendation of Experienced Counsel Favors
                        Approval.......................................................................................... 18

                4.      The Related FTC Action Further Supports Preliminary
                        Approval.......................................................................................... 19

        D.      The Proposed Forms of Notice and Notice Program are Appropriate
                and Should be Approved.............................................................................. 19

CONCLUSION ....................................................................................................................... 20

AMENDED CLASS ACTION COMPLAINT

1

## TABLE OF AUTHORITIES

2

**Page**

3

### CASES

4

*Amchem Prods. v. Windsor,*
   521 U.S. 591 (1997)......................................................................................... 13

5

*Armstrong v. Davis,*
6
   275 F.3d 849 (9th Cir. 2001)........................................................................... 11

7

*Arreola v. Godinez,*
   546 F.3d 788 (7th Cir. 2008)........................................................................... 13

8

*Barragan v. Evanger's Dog & Cat Food Co.,*
9
   259 F.R.D. 330 (N.D. Ill. 2009)...................................................................... 13

10

*Churchill Village, L.L.C. v. Gen. Elec.,*
   361 F.3d 566 (9th Cir. 2004)..................................................................... 14, 19

11

*City of Detroit v. Grinnell Corp.,*
12
   495 F.2d 448 (2d Cir. 1974)............................................................................ 15

13

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992)................................................................... 14, 17

14

*Ellis v. Naval Air Rework Facility,*
15
   87 F.R.D. 15 (N.D. Cal. 1980)........................................................................ 17

16

*Hanlon v. Chrysler Corp,*
   150 F.3d 1011 (9th Cir. 1998)............................................................. 10, 12, 14

17

*In re Heritage Bond Litig.,*
18
   No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .................... 17

19

*In re Juniper Networks Sec. Litig.,*
   264 F.R.D. 584 (N.D. Cal. 2009)..................................................................... 11

20

*In re LinkedIn User Privacy Litig.,*
21
   No. 5:12-cv-03088-EJD, 2015 U.S. Dist. LEXIS 123130 (N.D. Cal. Sept. 15, 2015)............. 15

22

*In re M.L. Stern Overtime Litig.,*
   No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650 (S.D. Cal. April 13, 2009) ...... 14

23

*In re Med. Ex-Ray Film Antitrust Litig.,*
24
   No. CV-93-5904, 1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998)............................ 15

*In re Michael Milken & Assocs. Sec. Litig.,*
   150 F.R.D. 46 (S.D.N.Y. 1993) ...................................................................... 15

25

26

*In re TracFone Unlimited Service Plan Litig.,*
27
   No. C-13-3440 EMC, 2015 WL 4051882 (N.D. Cal. July 2, 2015)............................ 19

28

       AMENDED CLASS ACTION COMPLAINT

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Jordan v. County of Los Angeles*,
   669 F.2d 1311 (9th Cir. 1982),

4

   *vacated on other grounds*, 459 U.S. 810 (1982) ................................................ 10, 11

5

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ............ 18

6

*Linney v. Cellular Alaska Partnership*,
   No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) .......................... 18

7

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ................................................................................. 15

8

9

*Nicholson v. UTI Worldwide, Inc.*,
   No. 3:09-cv-722-JPG-DGW, 2011 U.S. Dist. LEXIS 49890 (S.D. Ill. 10, 2011) ......... 13

10

*Pilkington v. Cardinal Health, Inc.*,
   516 F.3d 1095 (9th Cir. 2008) ............................................................................ 14

11

12

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .............................................................................. 12

13

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................................ 19

14

15

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ...................................................................................... 10

16

*West Virginia v. Chas. Pfizer & Co.*,
   314 F. Supp. 710 (S.D.N.Y. 1970),

17

   *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ................................................................... 15

18

**RULES**

19

20

Fed. R. Civ. P. 23(a)(1) ........................................................................................ 10

21

Fed. R. Civ. P. 23(a)(3) ........................................................................................ 11

22

Fed. R. Civ. P. 23(b)(3) ........................................................................................ 13

23

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................... 19

24

Fed. R. Civ. P. 23(e)(2) ........................................................................................ 14

**OTHER AUTHORITIES**

25

1 Newberg § 3.10 ............................................................................................... 10

26

4 Newberg on Class Actions (4th ed. 2002),

27

   § 11.22 *et seq.* ............................................................................................ 9, 14, 17

28

Manual for Complex Litigation, Fourth (Fed. Jud. Center 2004),
   §§ 21.63 *et seq.* ............................................................................................... 9

AMENDED CLASS ACTION COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs and Defendant LifeLock, Inc. ("LifeLock" or the "Company" or "Defendant") have reached a proposed settlement (the "Settlement") in the above-captioned action (the "Action").  Pursuant to the terms of the Settlement, LifeLock has agreed to establish a $68,000,000 non-reversionary settlement fund (the "Settlement Fund") for the benefit of members of the proposed Class.  The costs of administering the Settlement, as well as any attorneys' fees and costs and Service Awards to the Class Representatives that may be awarded by the Court will be paid by LifeLock *on top of* the Settlement Fund.  In other words, the Class will receive the entire $68,000,000 that comprises the Settlement Fund.  This represents an excellent recovery for the proposed Class and falls well within the "range of reasonableness" applicable at the preliminary approval stage.

The Settlement is the product of extensive arm's-length negotiations between the parties and their experienced and informed counsel.  The settlement negotiations spanned seven months and included two, full-day mediation sessions before a highly respected and skilled mediator, Justice Howard Wiener.  Prior to reaching the Settlement, Class Counsel thoroughly researched both the law and the facts involved in this case, reviewed and analyzed over 10,000 pages of documents produced by LifeLock, and deposed key employees of LifeLock.  Class Counsel therefore had a firm understanding of both the strengths and weaknesses of Plaintiffs' allegations and Defendant's potential defenses.  Both prior to and during the negotiations, Class Counsel faced formidable opposition from LifeLock's counsel who zealously defended their client's position.  Both sides were therefore well-represented by seasoned and informed counsel who vigorously pursued their respective client's interests.

The Settlement provides for direct notice to the Class via email or mail, which will be supplemented by publication and website notices.  The notices explain in plain language the terms of the Settlement, the amount of attorneys' fees and expenses Class Counsel will be seeking, and Class Members' rights, including the right to opt-out or to object to the Settlement and/or to Class Counsel's fee request.  The Settlement therefore accords the best notice practicable under the

1   circumstances and complies with due process.

2       In sum, the Settlement provides a significant benefit to the Class now, without the

3   inherent risks of continued litigation, was only reached after months of discovery and

4   negotiations, and enjoys the support of a neutral mediator who had an integral part in the

5   settlement negotiations.  Consequently, the Settlement satisfies the criteria for preliminary

6   approval.

7   **II.     OVERVIEW OF THE LITIGATION**

8       This Action was commenced on January 19, 2015, when Plaintiffs Napoleon Ebarle and

9   Jeanne Stamm, on behalf of themselves and a putative class, filed a complaint (the "Complaint")

10  (ECF No. 1) against LifeLock, alleging that LifeLock's advertisements regarding its identity theft

11  protection services violated Arizona's Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522(A)

12  ("ACFA").

13      On March 6, 2015, LifeLock filed a Motion to Dismiss (ECF No. 24) the Complaint.  In

14  response, Plaintiffs filed an Amended Class Action Complaint (the "Amended Complaint") (ECF

15  No. 31), which added Brian Litton as a Plaintiff and expanded upon the allegations and causes of

16  action in the original Complaint.  In their Amended Complaint, Plaintiffs allege that LifeLock

17  made numerous misrepresentations to them and all Class Members that generally fall into the

18  following four categories:  (1) LifeLock's promise to provide "comprehensive" services in

19  detecting fraud; (2) LifeLock's promise to provide timely and continuous alerts of potential fraud

20  twenty four hours a day, seven days a week, three hundred sixty five days a year; (3) LifeLock's

21  promise to keep customers' sensitive personal data—including credit card, social security, and/or

22  bank account numbers which all Class members were required to and did provide to LifeLock—

23  secure; and (4) LifeLock's promise to provide a "$1 Million Total Service Guarantee," which, as

24  the promise suggests purports to provide insurance in an amount up to $1,000,000 against identity

25  theft.  Plaintiffs' Amended Complaint seeks declaratory judgment, compensatory damages,

26  equitable relief, attorneys' fees, and costs.

27      In an effort to facilitate discussions regarding potential mediation and to maximize the

28  efficient use of judicial resources, on April 9, 2015, the parties filed a Joint Stipulation Regarding

1   Amended Complaint (ECF No. 34), requesting the Court to extend LifeLock's time to answer

2   Plaintiffs' Amended Complaint, which the Court granted (ECF No. 35).  Thereafter, on April 22,

3   2015, the parties participated in an in-person meeting regarding a possible mediation and

4   exchanging informal discovery prior to any such mediation.  Accordingly, on April 24, 2015, the

5   parties filed a second Joint Stipulation Regarding Amended Complaint (ECF No. 37), which the

6   Court granted on May 4, 2015 (ECF No. 38), giving Defendant until May 27, 2015 to answer or

7   otherwise respond to Plaintiffs' Amended Complaint.

8       On May 13, 2015, the parties filed a third Joint Stipulation Regarding Amended

9   Complaint (ECF No. 39), informing the Court that the parties had agreed to proceed with

10   mediation on July 1, 2015 and advising the Court that the parties would provide a status update

11   thereafter.  On May 22, 2015, the Court granted the parties' Joint Stipulation, staying the matter

12   pending the parties' mediation and giving the parties until July 10, 2015 to provide the Court with

13   a status update (ECF No. 40).

14       In accord with the parties' agreement to mediate this Action, the parties exchanged

15   informal discovery requests, which led to the production and review of thousands of pages of

16   documents.  The parties also exchanged confidential mediation statements addressing Plaintiffs'

17   allegations and LifeLock's potential defenses thereto.

18       On July 1, 2015, the parties participated in mediation before the highly respected

19   mediator, Justice Howard Wiener.  While the parties made good progress, they were unable to

20   reach a mutually agreeable resolution to the Action.  However, the parties agreed to schedule a

21   second mediation session, and accordingly filed a fourth Joint Stipulation Regarding Amended

22   Complaint (ECF No. 41) requesting a further extension until after the parties' August 18, 2015

23   mediation, which the Court granted on July 8, 2015 (ECF No. 42).

24       Leading up to the parties' second mediation session, the parties continued to engage in

25   informal discovery.  Ultimately, LifeLock produced, and Plaintiffs' Counsel reviewed, over

26   10,000 pages of documents, which included, but was not limited to: (i) exemplars of 416 print

27   advertisements disseminated between April 2010 and December 2012; (ii) exemplars of 75 aired

28   television commercials; (iii) account histories for the individual Plaintiffs; (iv) the Settlement

1   Agreement in the Multi District Litigation entitled *In Re LifeLock, Inc. Marketing and Sales*

2   *Practices Litigation*, MDL Docket No. 08-1977-MHM in the United States District Court for the

3   District of Arizona; (v) certain documents filed in the matter entitled *Federal Trade Commission*

4   *v. LifeLock, Inc.*, Case No. 10-CV-00530-PHX-MHM (D. Ariz.); (vi) transcripts of depositions

5   taken in other litigation involving LifeLock; (vii) an affidavit signed by Stephen Burke, a former

6   LifeLock employee; (viii) consumer surveys LifeLock conducted concerning certain of its

7   advertisements; (ix) "white papers" that LifeLock provided to the FTC in connection with its 18-

8   month investigation; (x) contracts between LifeLock and its vendors; (xi) LifeLock call-center

9   scripts; (xii) LifeLock's terms of service during the alleged Class Period; (xiii) insurance policies

10  underlying LifeLock's $1 million guarantee; (xiv) information regarding LifeLock subscribers;

11  (xv) alert histories including times when alerts may not have been delivered immediately; (xvi)

12  product pricing; (xvii) identity theft protection plan cancellations; (xviii) financial institutions

13  within LifeLock's monitoring network; and (xix) LifeLock's responses to numerous of the FTC's

14  requests for information.  The parties also exchanged supplemental mediation briefs.

15      On August 18, 2015, the parties participated in a second, all-day mediation session.  At

16  the conclusion of this session and only after Justice Wiener made a mediator's proposal, the

17  parties reached an agreement in principle to resolve this Action.  The parties memorialized the

18  principle terms of their agreement in a non-binding Memorandum of Understanding ("MOU").

19      Thereafter, the parties engaged in further negotiations regarding the remaining terms of

20  the Settlement, and worked together to develop a comprehensive set of settlement papers,

21  including the Class Action Settlement Agreement, the proposed Notices, the Claim Form, and the

22  proposed orders.

23      As part of the settlement framework and in furtherance of Plaintiffs' Counsel's due

24  diligence, Plaintiffs' Counsel took Rule 30(b)(6) depositions on various topics, including

25  LifeLock's policies and practices in delivering alerts to customers and how those policies and

26  practices changed over time.  LifeLock produced two key employees for these depositions:  (1)

27  Gregory Lim, Vice President Enterprise Risk & Strategic Operations, who was deposed on

28  September 24, 2015; and (2) Sharma Upadhyayula, Sr. Director, Product Management, who was

1    deposed on September 25, 2015.

2         On July 21, 2015, the Federal Trade Commission ("FTC") filed an enforcement action in

3    *Federal Trade Commission v. LifeLock, Inc.*, Case No. CV-10-00530-PHX-JJT, pending in the

4    United States District Court for the District of Arizona ("FTC Action"), which involves

5    underlying alleged violations that overlap with claims asserted on behalf of the Class in this

6    action.  After the principle Settlement terms in this Action were memorialized in the MOU,

7    LifeLock negotiated a separate proposed agreement with staff of the FTC that, if approved by the

8    Commission and the court, would settle the FTC Action by entry of a judgment for $100,000,000

9    in favor of the FTC for the purpose of consumer redress.  The proposed settlement would require

10   LifeLock to satisfy the $100,000,000 judgment by depositing the judgment amount in the registry

11   of the United States District Court for the District of Arizona.  LifeLock would be authorized to

12   use up to $68,000,000 from that Court registry to provide redress to consumers by funding the

13   Settlement Fund in this Action, provided that the Settlement Fund complies with the conditions of

14   the ultimate order entered by the court overseeing the FTC Action.  However, pursuant to

15   paragraph 57 of the Agreement in this Action, if for any reason, all or part of the $68,000,000 has

16   not been distributed from the Court's Registry to the Settlement Administrator by the date of

17   entry of the Final Approval Order, then LifeLock must pay within three business days following

18   entry of the Final Approval Order sufficient amounts to fully fund the $68,000,000 Settlement

19   Fund.

20        The Settlement was executed by all parties on November 3, 2015.  A copy of the executed

21   Settlement is being submitted simultaneously herewith as Exhibit A to the Joint Declaration.

22   **III.     THE PROPOSED SETTLEMENT AND SCHEDULE OF EVENTS**

23        **A.     <u>Summary of the Settlement Terms</u>**

24        The Settlement requires Defendant to establish a non-reversionary Settlement Fund of

25   $68,000,000 for the benefit of eligible Class Members, which includes a Class and Subclass.  The

26   Settlement defines the Class and Subclass as follows:

27   <u>Class:</u>
     All members of a LifeLock identity theft protection plan in the United States at
28   any time between September 1, 2010, and the date of the Preliminary Approval

1    Order.[3]

2    Subclass:
     All individuals who enrolled in (i.e. became a member of) a LifeLock identify
3    theft protection plan in the United States at any time between January 1, 2012, and
     April 30, 2015.[4]
4

5    LifeLock is excluded from the Class as well as any parent, subsidiary, affiliate, or controlled

6    person of LifeLock, as well as the officers, directors, agents, servants or employees of LifeLock

7    and the immediate family members of any such persons.  Also excluded is any judge who may

8    preside over the lawsuit.

9        All members of the Class were subject to the core allegations of misrepresentations in this

10   action: (1) LifeLock's promise to provide "comprehensive" services in detecting fraud; (2)

11   LifeLock's promise to provide timely and continuous alerts of potential fraud twenty four hours a

12   day, seven days a week, three hundred sixty five days a year; (3) LifeLock's promise to keep

13   customers' sensitive personal data—including credit card, social security, and/or bank account

14   numbers which all Class members were required to and did provide to LifeLock—secure; and (4)

15   LifeLock's promise to provide a "$1 Million Total Service Guarantee."

16       The Subclass accounts for differing potential damages allegedly sustained by those Class

17   Members who purchased LifeLock services during the timeframe between January 1, 2012 and

18   April 30, 2015.  Specifically, LifeLock's practices during that timeframe were particularly

19   problematic in that LifeLock advertised and marketed that it would provide "continuous,

20   uninterrupted" alerts of potential credit or identity fraud to customers 24 hours a day, seven days

21   a week, 365 days a year.  However, during that same timeframe, Plaintiffs claim that LifeLock

22   failed to deliver on that promise for various reasons, including its inability to provide alerts

23   during multiple planned maintenance and unplanned system outages and its decision to not

24   deliver certain alerts during 42 different weekends.  Since April 30, 2015, however, LifeLock no

25   longer makes such claims regarding alerts in its advertising, and it has also made multiple

26   technical improvements to its systems to ensure that customers will receive timely alerts.  For

27   _____
     [3] LifeLock estimates there are approximately 6.8 million Class Members.
28   [4] LifeLock estimates there are approximately 3.4 million Subclass Members.

example, LifeLock is now able to deliver alerts during planned maintenance and unplanned system outages through the use of "parallel tracks" that allow maintenance of the system on one track while alerts continue to be delivered to customers on another track.  In addition, LifeLock now has emergency backup systems through which alerts may be processed and delivered.

Pursuant to the terms of the Settlement, LifeLock has agreed to establish a $68,000,000 non-reversionary Settlement Fund for the benefit of members of the proposed Class.  The following proposed method of allocation pursuant to Sections VI and VII of the Settlement (the "Plan of Allocation") accounts for the fact that LifeLock's practices were more problematic during the Subclass timeframe:

- A Subclass Fund shall be created based on the percentage of the Class that comprises the Subclass.  For instance, if the Subclass comprises 50% of the Class, then 50% of the Settlement Fund shall be allocated to the Subclass Fund.

- Each Settlement Subclass Member will receive an automatic *pro rata* distribution from the Subclass Fund.

- In addition, each Class Member (including those who are members of the Subclass) may submit a claim for Twenty Dollars ($20.00) from the Class Fund, which shall be the Settlement Fund less the Subclass Fund.  In the event that claims submitted by Valid Claimants, *i.e.* Class Members who have submitted a timely and valid claim, exceed the total amount of the Class Fund, each Valid Claimant shall have a right to receive a *pro rata* distribution from the Class Fund.

- In the event that money remains from uncashed checks 120 days after the Payment Dates, a second *pro rata* distribution shall be made to Valid Claimants who cashed their initial payment checks.

- In the event that money remains from uncashed checks 120 days after the second distribution, the money shall be deposited into the Court Registry in the FTC Action described in Section IV(C)(4) below.

While actual payment amounts cannot be calculated at this time, Class Counsel estimate that Settlement payments will be approximately $20 for Settlement Class Members who make claims, $16 for Settlement Subclass Members who do not make claims, and $36 for Settlement Subclass Members who make claims, based on an estimated claims rate of 10% and estimated Class size of 6.8 million and Subclass size of 3.4 million.

1         The Settlement further provides that Settlement Administrative costs and any award of

2    attorneys' fees and costs and/or Service Awards to the Class Representatives will be paid by

3    LifeLock *in addition to* (and not out of) the Settlement Fund.  LifeLock has agreed not to oppose

4    an application by Class Counsel for an award of $10,200,000 in Attorneys' fees and Expenses,

5    and for Service Awards in the amount of $2,000 to each of the four Class Representatives.

6         In exchange of the foregoing consideration, the Final Judgment will be entered upon final

7    approval of the Settlement, and the Settlement Class Members will thereby release all claims

8    which have been or could have been asserted against the Defendant by any member of the

9    Settlement Class.

10   **B.    Proposed Schedule of Events**

11        Consistent with the provisions of the Settlement, Plaintiffs respectfully propose the

12   following schedule for the various Settlement events:

13

| Date | Event |
|------|-------|
| Three (3) business days after entry of Preliminary Approval Order | Deadline for LifeLock to provide Class Data to Settlement Administrator |
| Ten (10) days after filing of Preliminary Approval Motion | Deadline for Settlement Administrator to provide notice to federal or state officials per U.S.C. § 1715 |
| Ten (10) days after entry of Preliminary Approval Order (or within three (3) calendar days after entry of Final Approval Order if money not released from Court's Registry in the FTC Action) | LifeLock shall pay the sum to the Settlement Administrator of Sixty-Eight Million Dollars ($68,000,000.00) to create the Settlement Fund |
| Thirty (30) days after entry of Preliminary Approval Order | Notice Date and deadline for the Settlement Website and Toll-Free Number to go live |
| Thirty (30) days after Notice Date | Deadline for Class Counsel to file application for Attorneys' Fees and Expenses and request for Service Awards |
| Forty-five (45) days after Notice Date | Objection, Opt-Out Deadline |
| Sixty (60) days after Notice Date | Claim Deadline |
| Ten (10) days after notification from Settlement Administrator that more than two percent (2%) of the Class has requested exclusion | Deadline for LifeLock to notify Class Counsel and the Court that it is cancelling the settlement |
| Fifty-five (55) days after Notice Date | Settlement Administrator to provide to Class Counsel and LifeLock's Counsel a final list of Class Members who requested exclusion or objected |
| Seventy-five (75) days after Notice Date | Settlement Administrator to provide and Class Counsel to file a declaration detailing the scope, method, and status of the Class Notice program and the Claim process. |

- 8 -

| Date | Event |
|---|---|
| Seventy-five (75) days after Notice Date | Deadline for Final Approval Motion; and for the parties to provide any responses to Settlement Objections |
| One business day after entry of the Final Approval Order | Final Settlement Date |
| Twenty (20) days after the Final Settlement Date, or earlier if agreed upon by parties. | Payment Date (i.e., Deadline for Settlement Administrator to Disburse Settlement Fund) |
| Thirty (30) days after Payment Date | Settlement Website taken down |
| Thirty-five (35) days after Payment Date | Settlement Administrator to transfer Settlement Website URL to LifeLock |
| One hundred and twenty (120) days after Payment Date | Settlement checks expire |
| One hundred and twenty (120) days after the date appearing on second payment checks | Any checks issued as further distribution expire |
| One hundred and eighty (180) days after Final Settlement Date | Deadline for Class Counsel to return documents produced by LifeLock |
| One (1) year plus thirty (30) days after Payment Date | Deadline for Settlement Administrator to return documents received from Class Counsel or LifeLock's Counsel |

## IV.    LEGAL ANALYSIS

### A.    <u>Applicable Legal Standards</u>

Federal Rule of Civil Procedure 23 requires judicial approval of the compromise of claims brought on a class basis.  The procedure for judicial approval of a proposed class action settlement is well established and is comprised of the following:

  (1)    Certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval.

  (2)    Dissemination of notice of the proposed settlement to the affected class members.

  (3)    A formal fairness hearing, or final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

*See* Manual for Complex Litigation, Fourth (Fed. Jud. Center 2004), §§ 21.63 *et seq*.  This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as guardian of class interests.  *See* 4 Newberg on Class Actions, § 11.22 *et seq*. (4th ed. 2002) ("Newberg").

At this juncture and with this motion, Plaintiffs respectfully request that the Court take the first steps in the settlement approval process by granting preliminary approval of the proposed Settlement; provisionally certifying the proposed Class; and directing that notice be disseminated

to the Class pursuant to the proposed notice program.

        **B.**    <u>**Certification of the Proposed Settlement Class is Appropriate**</u>

        Certification of the proposed Class and Subclass is appropriate because Rule 23(a) and Rule 23(b)(3) are satisfied.

        **1.**    <u>**Rule 23(a) is Satisfied.**</u>

        **a.**    <u>**The Class and Subclass are Too Numerous to Permit Joinder.**</u>

        A case may be certified as a class action only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed rule, numerosity is generally presumed when the potential number of class members reaches forty (40). *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).

        Here, LifeLock estimates that there are approximately 6.8 million Class Members, 3.4 million of whom are in the Subclass. Accordingly, the Class and Subclass are sufficiently numerous to satisfy Rule 23(a)(1).

        **b.**    <u>**This Action Presents Common Questions of Law or Fact.**</u>

        Rule 23(a)(2) requires that there be one or more questions common to the class. *See Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1019 (9th Cir. 1998); 1 Newberg § 3.10; *see also Wal-Mart Stores, Inc*. *v. Dukes*, 131 S. Ct. 2541, 2556 (2011). In this Action, questions of law or fact common to all members of the Class include, among others, the following: (1) whether LifeLock's promise of "comprehensive" monitoring services was misleading and/or deceptive; (2) whether LifeLock's alert notification services were subject to regular delays and/or shut-downs; (3) whether LifeLock failed to maintain adequate technology and safeguards to deliver the protections as promised related to consumers' sensitive personal data, including credit card, social security, and/or bank account numbers, which all Class Members provided to LifeLock; and (4) whether LifeLock misrepresented and/or misled consumers regarding the benefits of its $1 Million Total Service Guarantee.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### c. **Plaintiffs' Claims are Typical of Those of the Class and Subclass.**

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Typicality does not require total identity between representative plaintiffs and class members. *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).  Rather, typicality is satisfied so long as the named plaintiffs' claims stem "from the same event, practice, or course of conduct that forms the basis of the class claims, and is based upon the same legal theory." *Jordan*, 669 F.2d at 1322; *In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 589 (N.D. Cal. 2009) ("representative claims are 'typical' if they are reasonably co-extensive with those of absent class members") (citation omitted).

Here, the named Plaintiffs' claims stem from the same common course of conduct as the claims of the Class Members.  Plaintiffs and all Class Members purchased LifeLock's products and/or services that were advertised, marketed, and sold as providing "comprehensive" monitoring services, timely and continuous alert detection and notification services, and a $1 Million Total Service Guarantee.  Plaintiffs and all Class Members provided Lifelock with sensitive personal data such as credit card, social security, and bank account numbers. Additionally, because Plaintiff Reiner Jerome Ebarle purchased LifeLock's service between January 1, 2012 and April 30, 2015 when LifeLock was advertising and selling its products and/or services as providing "continuous, uninterrupted" alerts of potential credit or identity fraud to customers 24 hours a day, seven days a week, 365 days a year and was failing to deliver upon that promise, his claims are typical of the Subclass.  Thus, the named Plaintiffs' claims are typical of the Class Members because they arise from LifeLock's common practices and misrepresentations.  Plaintiffs and the Class also share a common injury as a result of LifeLock's misconduct.  As such, Rule 23(a)(3) is satisfied.

### d. **Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class Members.**

Rule 23(a)(4) requires that the representative plaintiffs will "fairly and adequately" protect the interests of the class.  The two-prong test for determining adequacy is:  "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class

1   members?; and (2) will the representative plaintiffs and their counsel prosecute the action

2   vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003);

3   *Hanlon*, 150 F.3d at 1020.  Both prongs are satisfied here.

4          First, the named Plaintiffs' interests are aligned with, and not antagonistic to, the interests

5   of the Class Members.  Indeed, the named Plaintiffs and the Class Members are equally interested

6   in demonstrating LifeLock failed to deliver products and/or services as advertised, marketed, and

7   sold, and are further committed to obtaining appropriate redress.  *See Hanlon*, 150 F.3d at 1021

8   (adequacy satisfied where "each…plaintiff has the same problem").  Moreover, to assure

9   adequate representation of those members of the Class, such as Plaintiff Reiner Jerome Ebarle,

10  who purchased LifeLock's products and/or services during the timeframe of January 1, 2012 to

11  April 30, 2015, when LifeLock's advertising and practices relating to the delivery of alerts were

12  particularly problematic, the Subclass was constructed.[5]  Accordingly, the named Plaintiffs will

13  fairly and adequately protect the interests of all Class Members.

14         Second, Class Counsel have extensive experience litigating and settling class actions,

15  including consumer cases throughout the United States.  *See* Joint Decl., ¶ 28, Exs. B & C.

16  Undoubtedly, Class Counsel is well qualified to represent the Class.  Moreover, Class Counsel,

17  along with Plaintiffs, will vigorously protect the interests of the Class and maximize the recovery

18  for all Class Members, as evidenced by, *inter alia*, the terms of the proposed Settlement.

19                    **2.      The Requirements of Rule 23(b)(3) are Satisfied.**

20         In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must

21  be satisfied.  Here, the proposed Class and Subclass satisfy Rule 23(b)(3), which permits a class

22  action if the Court finds that "questions of law or fact common to class members predominate

23  over any questions affecting only individual members, and that a class action is superior to other

---

24  [5] As previously set forth in Section II above, the Subclass was created to account for the
    difference in potential damages sustained by those individuals who purchased LifeLock's services
25  based on differences that existed in the delivery of LifeLock's services and its advertising and
    practices during the timeframe between January 1, 2012 and April 30, 2015.  During this
26  timeframe, LifeLock advertised that it would provide "continuous, uninterrupted" alerts of
    potential credit or identity fraud to customers 24 hours a day, seven days a week, 365 days a year,
27  but Plaintiffs believe that LifeLock failed to deliver on that promise for various reasons, including
    its inability to provide alerts during multiple planned and unplanned maintenances and its failure
28  to deliver certain alerts during 42 different weekends.

1276074.3                          - 12 -

1    available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

2    23(b)(3).

3                    a.    **Common Questions of Law or Fact Predominate**

4            In analyzing the predominance factor, the Supreme Court has defined this inquiry as as

5    establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by

6    representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 622 (1997).  The predominance

7    inquiry examines "whether the shared attributes will be the main focus of the litigation."

8    *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009) (citing

9    *Amchem*, 521 U.S. at 623-24).  Importantly, "[w]hen a proposed class challenges a uniform

10   policy, the validity of that policy tends to be the predominant issue in the litigation."  *Nicholson v.*

11   *UTI Worldwide, Inc.*, No. 3:09-cv-722-JPG-DGW, 2011 U.S. Dist. LEXIS 49890, at *19 (S.D.

12   Ill. 10, 2011) (internal quotation marks and citations omitted) (finding defendant's policy of not

13   paying overtime predominated).  "Although the extent of each class member's personal damages

14   might vary," this does not defeat commonality if there are substantial common issues that

15   outweigh the single variable of damage amounts. *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir.

16   2008).

17           The common issues in this Action vastly outweigh any individual issues.  The common

18   issues, as set forth above in Section IV(B)(1)(b), arise from a common course of conduct, and

19   there is likely to be common evidence whether Defendant's actions violated applicable law.

20   Accordingly, this prong of Rule 23(b) is satisfied.

21                   b.    **A Class Action is the Superior Method of Adjudicating this**
                          **Action**
22
23           The second prong of Rule 23(b) is satisfied by the proposed Settlement.  As explained in

24   *Amchem,* "[c]onfronted with a request for settlement-only class certification, a district court need

25   not inquire whether the case, if tried, would present intractable management problems, *see* Fed.

26   Rule Civ. Pro. 23(b)(3)(D), for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620.

27   Thus, any manageability problems that may have existed in this case are eliminated by the

28   proposed Settlement.

1

## C.    Preliminary Approval of the Settlement is Appropriate.

Public policy "strong[ly] . . . favors settlements, particularly where complex class action litigation is concerned."  *Pilkington v. Cardinal Health, Inc.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

"[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." *Hanlon*, 150 F.3d at 1026.  In exercising such discretion, the Court should give "proper deference to the private consensual decision of the parties…[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027; *see also* Fed. R. Civ. P. 23(e)(2).

Importantly, "[b]ecause class members will subsequently receive notice and have an opportunity to be heard on the settlement, [a] Court need not review the settlement in detail at [the preliminary approval stage]; instead, preliminary approval is appropriate so long as the proposed settlement falls 'within the range of possible judicial approval.'"  *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650, at *9-10 (S.D. Cal. April 13, 2009) (quoting A. Conte & H. B. Newberg, *Newberg on Class Actions*, § 11.25 (4th ed. 2002)).

The proposed Settlement here satisfies the standard for preliminary approval because: (a) it is within the range of possible approval; (b) there is no reason to doubt its fairness because it is the product of hard-fought, arms-length negotiations between the parties and was only reached after a thorough investigation by Plaintiffs' Counsel of the facts and the law and after a mediator's proposal was made at the conclusion of two days of mediation; and (c) Plaintiffs and Class Counsel believe it is in the best interest of the Class.

1    **1.    The Settlement Falls Within the Range of Possible Approval**

2    Determining whether a settlement is "reasonable" is not susceptible to a mathematical

3    equation yielding a particularized sum.  *In re Med. Ex-Ray Film Antitrust Litig.,* No. CV-93-5904,

4    1998 U.S. Dist. LEXIS 14888, at *15 (E.D.N.Y. Aug. 7, 1998); *Newman v. Stein*, 464 F.2d 689,

5    693 (2d Cir. 1972) ("[I]n any case there is a range of reasonableness with respect to a settlement –

6    a range which recognizes the uncertainties of law and fact in any particular case and the

7    concomitant risks and costs necessarily inherent in taking any litigation to completion.").  As

8    such,

9    [t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly

10   inadequate and should be disapproved. . . .  In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a

11   thousandth part of a single percent of the potential recovery.

12   *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2d Cir. 1974) (citations omitted).

13   Here, the Settlement provides for a cash Settlement Fund of $68,000,000, all of which will

14   be distributed to the Class.  While Plaintiffs have calculated the maximum value of their claims to

15   be a figure larger than the settlement amount, when this amount is discounted by the identifiable

16   risks, experience dictates that the interests of the Class are better served by the proposed

17   Settlement.  *See In re LinkedIn User Privacy Litig.,* No. 5:12-cv-03088-EJD, 2015 U.S. Dist.

18   LEXIS 123130, at *22 (N.D. Cal. Sept. 15, 2015) ("Immediate receipt of money through

19   settlement, even if lower than what could potentially be achieved through ultimate success on the

20   merits, has value to a class, especially when compared to risky and costly continued litigation.");

21   *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd,* 440 F.2d

22   1079 (2d Cir. 1971) ("In considering the proposed compromise, it seems also to be of importance

23   that (if approved) the substantial amounts of money are available for class members now, and not

24   at some distant time in the future.") (citations omitted); *see also In re Michael Milken & Assocs.*

25   *Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting that even a favorable jury verdict "is no

26   guarantee of ultimate success").

27   Indeed, in contrast to the tangible, immediate benefits of the Settlement, the outcome of

28   continued litigation and a trial against LifeLock is uncertain and could add years to this litigation.

1   LifeLock has vigorously denied Plaintiffs' allegations of wrongdoing, and, absent settlement,

2   Plaintiffs anticipate LifeLock would defend this action aggressively at multiple, procedural steps

3   prior to trial, including a motion to dismiss, motion for summary judgment and opposition to

4   class certification.  In particular, LifeLock denies that it engaged in any intentional "throttling"

5   (*i.e.* systemic delays) of alerts, and also maintains that it provides the most comprehensive

6   identity theft protection services available on the market.  LifeLock additionally asserts that any

7   inadvertent delays in sending alerts to customers affected only a small number of its customers,

8   and that such delays in any event did not result in any harm in the form of actual credit fraud or

9   identity theft such that LifeLock claims that none of the Class Members have suffered any injury.

10  Moreover, LifeLock believes that variances in the representations that Class Members saw,

11  whether Class Members' alerts were delayed, and whether Class Members suffered any harm

12  make class certification unlikely.  While Plaintiffs disagree with LifeLock's view, there is at least

13  some risk that, absent a settlement, Class Members might recover nothing.  In reaching the

14  Settlement prior to dispositive motions or trial, Plaintiffs and Class Counsel have ensured a

15  favorable recovery for the members of the Class and avoided significant expense, delay, and

16  uncertain results.

17      Moreover, the proposed Plan of Allocation is fair and reasonable as it is tied to the

18  strength of the Class and Subclass Members' respective claims and accounts for differences in

19  their purchasing decisions based upon differences in LifeLock's advertising and practices and the

20  delivery of LifeLock's services.  At enrollment, Subclass Members were promised that alerts of

21  potential credit or identity fraud would be provided to them 24 hours a day, seven days a week,

22  365 days a year, but Plaintiffs claim LifeLock failed to deliver on its promise during planned and

23  unplanned system outages and on certain weekends.  Hence, Subclass Members will receive

24  automatic, *pro rata* distributions from the Subclass Fund, while all Class Members (including

25  those who are members of the Subclass) may submit a claim form online or via mail for a

26  payment from the Class Fund.

27      In sum, the Settlement provides substantial relief to all Class Members based on the

28  strengths of their respective claims without delay and is within the range of reasonableness,

1    particularly in light of the above risks that Class Members would face in litigation.

2              **2.      The Settlement is the Product of Arms-Length Negotiations After a Thorough Investigation, Without a Trace of Collusion**

3

4           "Before approving a class action settlement, the district court must reach a reasoned

5    judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion

6    among, the negotiating parties." *City of Seattle*, 955 F.2d at 1290.  Where a settlement is the

7    product of arms-length negotiations conducted by capable and experienced counsel, the court

8    begins its analysis with a presumption that the settlement is fair and reasonable.  *See* 4 Newberg

9    § 11.41; *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *32

10   (C.D. Cal. June 10, 2005); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

11          Here, the Settlement was reached after informed, extensive arm's-length negotiations.

12   First, the Settlement was reached after a thorough investigation into and discovery of the legal

13   and factual issues in the Action.  In particular, before filing suit, Class Counsel conducted an

14   extensive investigation into LifeLock's marketing and advertising materials, its terms of service,

15   and its Master Insurance Policy, as well as industry facts and the applicable law.  In addition to

16   their pre-filing efforts, Class Counsel engaged in an ongoing factual and legal investigation

17   throughout the pendency of this Action.  As part of their continued investigation, Class Counsel

18   reviewed and analyzed thousands of documents informally produced by LifeLock relating to the

19   key issues in this Action, including, among other things, LifeLock's advertising, its policies and

20   practices in sending alerts, any issues that resulted in delays in sending alerts, and the scope of its

21   identity and credit fraud monitoring network.  *See* Section II, *supra*. Class Counsel also deposed

22   two central employees who were designated as LifeLock's representatives on certain topics,

23   including its advertising, policies and practices in delivering alerts, issues that caused any delays

24   in alerts, and the improvements LifeLock has made to its advertisements and its alert processing

25   and delivery systems, which were completed by April 30, 2015.  *Id.*

26          Second, the Settlement was only reached after the parties participated in two full-day

27   mediation sessions before experienced mediator Justice Howard Wiener.  Wiener Decl. ¶ 11.

28   These mediation sessions were informed through the exchange of confidential mediation

1    statements, which discussed the strengths and weaknesses of both Plaintiffs' allegations and

2    LifeLock's potential defenses and relevant documents related thereto.  Throughout the mediation

3    sessions, each party's respective counsel vigorously advocated for their respective client's

4    position.  *Id.* ¶ 10.  Notwithstanding the contentious nature of the mediation sessions, the parties

5    were able to come to an agreement in principle with the assistance of Justice Wiener, and only

6    after a mediator's proposal.  *Id.* ¶ 9.

7          In sum, it is clear that the Settlement was reached only after Class Counsel conducted an

8    extensive factual investigation and discovery into the Defendant's alleged misconduct and

9    potential damages, thoroughly researched the law pertinent to Plaintiffs' and the Class' claims

10   and the Defendant's defenses.  Consequently, Class Counsel had a wealth of information at their

11   disposal before entering into settlement negotiations, which allowed Class Counsel to adequately

12   assess the strengths and weaknesses of Plaintiffs' case and balance the benefits of settlement

13   against the risks of further litigation.  Nothing in the course of the negotiations or in the substance

14   of the proposed Settlement presents any reason to doubt the Settlement's fairness.

15          **3.      The Recommendation of Experienced Counsel Favors Approval.**

16          In considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel

17   should be given a presumption of reasonableness."  *Knight v. Red Door Salons, Inc.*, No. 08-

18   01520 SC, 2009 U.S. Dist. LEXIS 11149, at *11 (N.D. Cal. Feb. 2, 2009); *see also Linney v.*

19   *Cellular Alaska Partnership*, No. C-96-3008 DLJ, 1997 WL 450064, at 5 (N.D. Cal. July 18,

20   1997).  Here, Class Counsel endorse the Settlement as fair, adequate, and reasonable.  Joint Decl.,

21   ¶ 4.

22          As demonstrated herein and in each respective firms' resume, Class Counsel have

23   extensive experience litigating and settling consumer class actions and other complex matters (*see*

24   *id.*, ¶ 28, Exs. B & C) and have conducted an extensive investigation into the factual and legal

25   issues raised in this Action (*see id.*, ¶ 29).  Using their experience and knowledge, Class Counsel

26   have weighed the benefits of the Settlement against the inherent risks and expense of continued

27   litigation, and they strongly believe that the proposed Settlement is fair, reasonable, and adequate.

28   The fact that qualified and well-informed counsel endorse the Settlement as being fair,

1  reasonable, and adequate weighs heavily in favor of approving the Settlement.

2  **4.    The Related FTC Action Further Supports Preliminary Approval**

3  Under the proposed settlement of the FTC Action, if approved by the Commission and the

4  court, LifeLock would be authorized to use up to $68,000,000 of the funds that it deposits in the

5  Court's registry to fund the Settlement Fund in this Action, provided that the Settlement Fund

6  complies with the conditions of the ultimate order entered by the court overseeing the FTC

7  Action.  This coordination lends further support to preliminary approval.  *See In re TracFone*

8  *Unlimited Service Plan Litig.,* No. C-13-3440 EMC, 2015 WL 4051882 at *1 (N.D. Cal. July 2,

9  2015) (holding that coordination of a consumer settlement with an FTC settlement "weigh[ed] in

10  favor of final approval"); *Churchill Village,* 361 F.3d at 575 (coordination with the government

11  should be considered when determining whether a settlement should be finally approved).

12  **D.    The Proposed Forms of Notice and Notice Program are Appropriate and Should be Approved.**

13

14  The proposed forms of notice and notice program fully comply with due process and Fed.

R. Civ. P. 23.  Rule 23 (c)(2)(B) requires:

15

16  the best notice practicable under the circumstances, including individual notice to
all members who can be identified through reasonable effort.  The notice
must concisely and clearly state in plain, easily understood language: the nature of the
action; the definition of the class certified; the class claims, issues, or defenses;

17  that a class member may enter an appearance through an attorney if the member so
desires; that the court will exclude from the class any member who requests

18  exclusion; the time and manner for requesting exclusion; and the binding effect of
a class judgment on class members under Rule 23(c)(3).

19

20  In the context of a class settlement, the notice must also include a general description of the

21  proposed settlement.  *See Churchill Village*, 361 F.3d at 575; *Torrisi v. Tucson Elec. Power Co.*,

22  8 F.3d 1370, 1375 (9th Cir. 1993).

23  Here, the Settlement requires Plaintiffs to provide direct, individual notice of the

24  Settlement to Class Members via email or mail, utilizing Defendant's internal records.  In

25  addition to direct notice, notice of the Settlement will be posted on the Settlement Administrator's

26  website and published in an one-eighth (1/8) page advertisement in USA Today.  These notices

27  shall, among other things, advise Class Members of the pendency of the Action, including the

28  nature of the action and a summary of the claims; the essential terms of the Settlement; the rights

1   of Class Members to share in the recovery or to request exclusion from the Class; the rights of

2   Class Members to object to the Settlement and to appear before the Court at the Final Approval

3   Hearing, and will provide specifics on the date, time, and place of the Final Approval Hearing.

4   The notices also contain information regarding Class Counsel's fee and expense application,

5   Class Representatives' service awards, and the proposed Plan of Allocation.  Thus, the notices

6   provide the necessary information for Class Members to make an informed decision regarding the

7   proposed Settlement.

8   　　　　In short, the form and manner of notice proposed here fulfill all of the requirements of

9   Rule 23 and due process, and Plaintiffs request that the Court direct that notice of the proposed

10  Settlement be given to the Class.

11  **CONCLUSION**

12  For the foregoing reasons, Plaintiffs respectfully request that the Court do the following:

13      a)      Grant Plaintiffs leave to file their Second Amended Class Action Complaint;

14      b)      Grant preliminary approval of the proposed Settlement entered into between the
                parties;

15

16      c)      Certify, for settlement purposes, the proposed Class and Subclass, as defined in the
                Settlement;

17      d)      Appoint Plaintiffs Napoleon Ebarle, Jeanne Stamm, Brian Litton, and Reiner
                Jerome Ebarle as Class Representatives;

18

19      e)      Appoint Hank Bates of Carney Bates & Pulliam PLLC and Michael W. Sobol of
                Lieff Cabraser Heimann & Bernstein LLP as Class Counsel;

20      f)      Approve the parties' proposed notice program, including the proposed forms of
                notice, as set forth in the Settlement, and direct that notice be disseminated
21              pursuant to such program;

22      g)      Appoint Garden City Group as Settlement Administrator, and direct Garden City
                Group to carry out the duties and responsibilities of the Settlement Administrator
23              specified in the Settlement;

24      h)      Stay all non-Settlement related proceedings in the Action pending final approval of
                the Settlement; and

25

26      i)       Set a Fairness Hearing and certain other dates in connection with the final
                 approval of the Settlement.

27

28

1    Dated:  November 4, 2015                    Respectfully submitted,

2                                      By:    /s/ Michael W. Sobol
                                           LIEFF CABRASER HEIMANN
3                                           & BERNSTEIN, LLP
                                           Michael W. Sobol (CA #194857)
4                                          msobol@lchb.com
                                           Nicole D. Sugnet (CA #246255)
5                                          nsugnet@lchb.com
                                           RoseMarie Maliekel (CA #276036)
6                                          rmaliekel@lchb.com
                                           275 Battery Street, 29th Floor
7                                          San Francisco, CA  94111-3339
                                           Telephone:  (415) 956-1000
8                                          Facsimile:  (415) 956-1008

9                                          CARNEY BATES & PULLIAM, PLLC
                                           Joseph Henry ("Hank") Bates (CA #167688)
10                                         Randall K. Pulliam
                                           11311 Arcade Drive, Suite 200
11                                         Little Rock, AR 72212
                                           Telephone:  (501) 312-8500
12                                         Fax:  (501) 312-8505

13                                         *Attorneys for Plaintiffs*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 21 -