Steven F. Helfand, SBN 206667
HELFAND LAW OFFICES
1400 SW 137th Avenue, Unit F112
Hollywood, FL 33027

Telephone:    415.596.5611
Email:        sh4078@gmail.com

Counsel for Walter F. Ellingwood, III

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| NAPOLEON EBARLE, JEANNE STAMM BRIAN LITTON and REINER JEROME EBARLE, on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br> vs. <br><br> LIFELOCK, INC., <br><br> Defendant. | Case No.: 3:15-CV-00258 <br><br> **NOTICE OF OBJECTION AND INTENTION TO APPEAR** |

The instant case is the hallmark of a "tag-along" action. The Federal Trade

Commission [hereafter "FTC"] commenced the underlying enforcement action

which raised serious and substantial questions as to Lifelock, Inc.'s [hereafter

"Lifelock"] conduct. Out of a $100 million dollar fund that originated from the

actions solely because of the competence of the FTC, the class plaintiffs have

managed to segregate $68 million.  Incomprehensibly, the Notice affirmatively

misleads the class, asserting that, "If the proposed Settlement is approved and

becomes final, Lifelock has agreed to pay $68 million to a Settlement Fund."  The

assertion flies in the face of the FTC Settlement Agreement with Lifelock.  Rather,

the FTC has allowed $68 million of the $100 million dollar penalty payable to the

FTC to compensate Lifelock's customers.  Class counsel seeks to claim credit

where credit is not due.  Everyone knows this.  The FTC action was successful.

There is no evidence the FTC needed any help or got it from Class counsel.

Rather, the FTC, utilizing its independent judgment is now allowing some of the

money it obtained from Lifelock to flow to the class.  The notion that Class counsel

did anything other than confirm whatever discovery needed to be confirmed

renders the underlying fee application, patently absurd.  This is overreach by

attorneys who are claiming incredibly inflated rates for achieving, essentially,

nothing.  Kudos to Lifelock's counsel for achieving a settlement here; two for the

price of one.  If Class counsel genuinely was instrumental in achieving the $68

million fund; why not have fees payable out of the fund?  Presumably, it is because

the FTC would not have allowed it.  The Court should inquire as to

communications between the FTC and Class counsel.  Why is it that Class counsel

elected to seek payment directly from Lifelock?  It was not to save the class

money, certainly. This is because Class counsel unilaterally disarmed. Lifelock

agrees to pay a certain amount. However, the Court need not blindly award this

sum. This money, had it been joined with the fund would have innurred to the

benefit of class members, in the event Class counsels' fees were reduced. Class

counsel left money on the table; and conflicted themselves out in the process. But,

here's the point; as Class counsel did not create the $68 million dollar fund; they

had no entitlement to it. Thus, Class counsel had to get Lifelock to settle away a

case that already settled with the FTC. The settlement simply is not fair and is, in

essence, a big payoff for Class counsel who elected to ride the coat-tails of the

FTC; they got a big reward; enormous fees; the class realized almost nothing. The

Notice makes it seem that Class counsel was somehow instrumental. The FTC

gets no credit. The prior settlement with the FTC is ignored or glossed over. It

would seem that Class counsel orchestrated a great deal here; a $68 million fund

for the Class and the fund is not even diminished to pay the lawyers who claim to

have negotiated such a great deal. But, unknown to the Class, Class counsel

actually parsed the FTC deal; taking a piece that the FTC had already obtained.

Moving shells on the board achieves nothing. Obviously, the FTC would facilitate

a carve-out because that is what the FTC does. The notion that the FTC would

take all the money from the settlement and not distribute any portion to class

members is silly. The FTC was valiant in its efforts. Class counsel essentially

reviewed the FTC's work; taking just two depositions in the process; and then somehow "earned" ten million plus in fees. This cannot be allowed to stand. The hourly rates are enormously inflated. The time spent does not square with actual work done. The settlement is unfair in any event and totally unreasonable.

In other words, the FTC obtained the result; the class attorneys managed to convince both Lifelock and the government that a portion of the FTC created fund should be disseminated to the Class. The settlement agreement in fact, stipulates that most of the discovery produced in this case was informal and evidently confirming. Two depositions were taken. How many attorneys for the class attended these depositions? How many asked questions? Yet, class counsel seeks over ten million dollars in fees payable by Defendant on an FTC fund class counsel did not create. Here's what is stated in Lifelock's annual report:

"On March 13, 2014, we received a request from the FTC for documents and information related to our compliance with the FTC Order. Prior to our receipt of the FTC's request, we met with FTC Staff on January 17, 2014, at our request, to discuss issues regarding allegations that have been asserted in a whistleblower claim against us relating to our compliance with the FTC Order. On October 29, 2014, we completed our responses to the FTC's March 13, 2014 request for information, and on January 5, 2015, we provided responses to subsequent FTC requests for additional information. On July 21, 2015 the FTC lodged, under seal,

in the United States District Court for the District of Arizona, a motion seeking to

hold us in contempt of the FTC Order. On December 17, 2015, we entered into a

comprehensive settlement agreement with the FTC, pursuant to which we resolved

all matters related to the FTC Contempt Action and the Ebarle Class Action. Under

the terms of the settlement, $100 million was placed into the registry of the court

overseeing the FTC Contempt Action, $68 million of which is to be distributed to

the court overseeing Consumer Class Action to fund the consumer redress

contemplated by the Consumer Class Action settlement, and the remaining $32

million of which is authorized to fund consumer redress ordered by any states'

attorneys general, provided that certain conditions are met. If all or part of the $32

million is not used for that purpose, it will revert to the FTC. On January 19, 2015,

plaintiffs Napoleon Ebarle and Jeanne Stamm filed a nationwide putative consumer

class action lawsuit against us in the United States District Co. for the Northern

District of California. The plaintiffs allege that we have engaged in deceptive

marketing and sales practices in connection with our membership plans in violation

of the Arizona Consumer Fraud Act and seek declaratory judgment under the

Federal Declaratory Judgment Act. On March 27, 2015, plaintiffs filed an amended

complaint, adding an additional plaintiff, Brian Litton, adding a breach of contract

claim, and expanding the class period to include all members enrolled in one of the

company's identity theft protection plans since January 1, 2010, through the

present. On November 3, 2015, LifeLock signed an agreement to settle the Ebarle

Class Action and release all of the class's related claims. The Ebarle Class Action

settlement remains subject to court approval. On November 4, 2015, plaintiffs filed

a motion for preliminary approval. The hearing on Plaintiffs' motion for

preliminary approval of the class action settlement agreement was held on

December 17, 2015, before the court overseeing the Ebarle Class Action. The court

overseeing the Ebarle Class Action granted the motion for preliminary approval on

January 20, 2016. On February 11, 2016, the court overseeing the FTC Action

entered an order allowing the $68 million to be transferred from the court's registry

to the settlement administrator in the Ebarle Class Action to fund the settlement. A

hearing on final approval will be held on June 23, 2016."

All of the declarations are coy as to the amounts claimed by counsel for work

actually performed.  It appears the settlement was a product of collusion; class

counsel simply bootstrapping off of the FTC and then extracting a very generous

payment for the compromise of claims.  The record speaks for itself.

The collusive settlement is confirmed by the excessive nature of the fee

request; which is the subject of a clear-sailing agreement.  This entire settlement

needs heightened scrutiny.  Why would Lifelock agree to pay separately?  Were

fees discussed during negotiations?  The Court needs to know who said what to

whom and when.  There is a probability fees were discussed at the outset, colusion

compounded by the inadequacy of the underlying deal.  In the meantime, class

counsel were inadequate representatives; having sought a fee directly from

Defendants so as to avoid scrutiny from their own clients.  Class counsel shall

likely claim there is a lack of standing; ignoring that by its very actions in carving

out a separate and independent payment directly from Lifelock it foisted a massive

conflict that could not be reconciled over the entire class.  Class counsel and the

named representatives are inadequate.  The early pay provision is also a conflict.

Why would Lifelock agree to this, if the settlement came first, and fees afterword.

It is obvious that some portion of a fee negotiation must have come first; as no

reasonable settling defendant would agree to pay money if it could wait.  If Lief

Cabraser were even good for the advance payment of money, contingent on

repayment in the event of reversal, which is totally unknown, further problems are

created.   Will the class be stuck with a potential bad debt?  Even a contingent debt,

which is precisely, what is created here violates the canons of ethics in the absence

of adequate disclosure.  Yet, the Notice is utterly silent.  No attempt is made for

informed consent.  The Court need only remember Brobeck and Heller Ehrman.

Others exist.  Why is it assumed, that without the execution of a sufficient surety

note, Lief Cabraser will simply return the money in the event of reversal or

overpayment?  What facts support such a provision? The class is stuck with any

potential bad debt.  If Lief Cabraser were to dissolve, what assurances are there of

repayment.  Prior law partners of the Lief Cabraser firm have previously sought dissolution of it.  What happens to the Class should the next case be met with success?  Yet there are no affirmative disclosures to the class the the lawyers are to be first; and class members potentially exposed to liability to repay LifeLock in the event the Class attorneys cannot satisfy repayment obligation.  This is a conflict barred by the Rules of Professional Responsibility.  There was no waiver of conflict; there could be no waiver under the circumstances.  The Class attorneys are proceeding detrimentally to the interests of their own clients.

The fees sought are based on grossly inflated rates.  Michael Sobol, for example, believes his reasonable fee is $850.00? This seems way too high.  Mr. Sobol is a wonderful attorney; but even wonderful attorneys are not worth $850.00 per hour in a class action with little contingent risk and that settled quickly based on government enforcement efforts.  What are the FTC rates? The maximum FTC rates should be the maximum that the Class attorneys are entitled to receive.  These ginormous fees cause a massive ethical disconnect between the attorneys purporting to represent the class and lay class members.  Fee applications should not be a get-rich quick scheme.

The fees which are sought are plainly excessive and everyone knows it.  No class member would have ever bargained, at arms-length,  for such excessive fees in good faith.  Hank Bates claims his rate is $750 an hour.  Same with other

partners.  Most of the alleged work was performed by partners; presumably including such lowly steps as "document reviews."  Why wasn't the work distributed more efficiently?  What was so novel?  What was so complex?  Given the FTC had already created the fund; query where any contingent risk actually existed.

How many attorneys for the class staffed the two brief depositions?  Why was staffing compounded and this compounding multiplied?  Why weren't paralegals, at far more reasonable rates, tasked with performing a review of just 10,000 pages of documents?  Why weren't associates utilized more efficiently?  How does Mr. Sobol's rates in other class actions square with his claimed rates in this action?  There was not such a massive volume of work that should have been required; there is an absence of evidence demonstrating why the claimed amounts was or could be required under any possible circumstance.  The declarations in support of the excessive fees are not meaningful; failing to discuss the work claimed to be required or why.  No specifics are provided.  Facts are ignored.  No fee should be awarded here under the circumstances.

Respectfully submitted,

Dated: April 6, 2016          /s/_____

Steven Franklyn Helfand
1400 SW 137th Avenue, Apt. F112
Hollywood, FL 33027

OBJECTION AND NOTICE TO APPEAR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Telephone:  415.397.0007
Email:       sh4078@gmail.com

OBJECTION AND NOTICE TO APPEAR

10

## Declaration of Walter F. Ellingwood, III

I, Walter F. Ellingwood, III, hereby declare as follows:

1. As a preliminary, matter, I am a class member in this case.  Per the class settlement agreement, the "'Class' means all members of a Lifelock identity theft protection plan in the United States at any time between September 1, 2010, and the date of the Preliminary Approval Order.  Lifelock estimates there will be approximately 6.8 million Class members.'"

2. I have attached Exhibits A and B.  Exhibit A reflects the temporary user ID that was provided when I signed into my Lifelock account for the first time. It is "8dvqmbty."  On the document, I have redacted the password.  The parties are hereby alerted that any attempt to access my Lifelock account and view my confidential membership information is not allowed and I tender an objection to such a privacy invasion.  Neither LifeLock's attorneys nor the attorneys for the class have a right to violate the terms of agreement with Lifelock, procedural requirements, or anything else.  The password shall not be provided absent a Court Order.

3. The email address that I used at the time was "walter@wfe3.com."

4. My address is confidential.  If any party has any questions, they may direct them to my attorney and he is authorized to meet and confer on my behalf.

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 6, 2016.

Walter F. Ellingwood, III





**Dear Walter Ellingwood,**

Learn about the latest identity theft news, subscribe to useful LifeLock communications, and manage your account by signing in to your secure online portal now. If you're a LifeLock Ultimate or Command Center member, the portal is your source for proactive reports and alerts about your identity.

Use the following temporary user ID and password when signing into your account for the first time:
**User ID: 8dvqmbty**
**Password:** ▮▮▮▮▮ *Redacted*

**SIGN IN TO VIEW YOUR ACCOUNT**

**TIP:** To change your User ID/Password at any time, click the 'Manage Account' tab at the top of the screen and then the 'Update Account Access' link on the left.





🔍 ⊙ LifeLock Member... ⊗   Cancel

**LifeLock Member Services**   3/10/15 ›
🔲 Good News! We helped protect your id...
LifeLock.com
1.800.LifeLock...

**LifeLock Member Services**   2/10/15 ›
🔲 LifeLock Billing Information Update Re...
LifeLock.com
1-800-LifeLock...

**LifeLock Member Services**   1/27/15 ›
🔲 LifeLock Identity Alert – Action Reques...
LifeLock.com
1.800.LifeLock...

**LifeLock Member Services**   1/11/15 ›
🔲 LifeLock Notification: Black Market We...
LifeLock.com
1.800.LifeLock...

**LifeLock Member Services**   1/10/15 ›
🔲 Your Temporary LifeLock User ID/Pass...
LifeLock.com | 1.800.543.3562 | Contact us
Dear Walter Ellingwood, Learn about the lat...

Edit