UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAPOLEON EBARLE, JEANNE STAMM, BRIAN LITTON, and REINER JEROME EBARLE on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br>v.<br><br>LIFELOCK, INC.,<br><br>Defendant. | Case No. 3:15-CV-258-HSG<br><br><u>CLASS ACTION</u><br><br>**DECLARATION OF LORI L. CASTANEDA REGARDING NOTICE AND SETTLEMENT ADMINISTRATION**<br><br>Judge: Hon. Haywood S. Gilliam |

DECLARATION OF LORI L. CASTANEDA

I, LORI L. CASTANEDA, declare and state as follows:

1. I am a Vice President of Operations at Garden City Group, LLC ("GCG"). The following statements are based on my personal knowledge and information provided by other experienced GCG employees working under my supervision and, if called on to do so, I could and would be competent to testify thereto.

2. GCG is a recognized leader in legal administration services for class action settlements, bankruptcy cases, and legal noticing programs. In its history of over 25 years, our team has served as administrator for over 3,000 cases. GCG has mailed over 290 million notices, disseminated over 800 million emails, handled over 29 million phone calls, processed over 50 million claims, and distributed over $37 billion in benefits.

3. GCG was appointed as the Settlement Administrator pursuant to the Court's Order Granting Motion for Preliminary Approval (the "PA Order") dated January 20, 2016. In accordance with the Class Action Settlement Agreement (the "Settlement Agreement")[1] and the Court's January 25, 2016 Stipulation and Order Regarding Revised Notices and Schedule of Settlement Dates (the "Revised Order"), I submit this Declaration in order to advise the Parties and the Court regarding the implementation of the Court-approved Class Notice program, Claims Process, and to report on Settlement Administration, in accordance with the Settlement Agreement, PA Order, and Revised Order.

## CAFA NOTICE

4. Pursuant to Section VII.66 of the Settlement Agreement, and in compliance with the requirements of 28 U.S.C. § 1715, on November 13, 2015, GCG served upon all required government officials initial notice of the proposed Settlement Agreement and an estimate of the

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning as set forth in the Settlement Agreement.

1  number of Class Members residing in each state. The notice included a compact disc containing
2  electronic copies of all complaints filed in the Action (as well as instructions for how to
3  download the documents electronically from the Court's ECF system), the Settlement Agreement
4  and exhibits thereto, and Plaintiffs' Notice of Motion; Motion for Preliminary Approval of Class
5  Action Settlement; and Memorandum of Points and Authorities and exhibits thereto. On
6  November 20, 2015, GCG served upon all required government officials supplemental notice of
7  the proposed Settlement Agreement with an updated estimate of the number of Class Members
8  residing in each state. A list of all government officials to whom CAFA notice was provided is
9  attached hereto as **Exhibit A**.

## CLASS DATA TRANSFER

11       5.       Pursuant to Paragraph VII.65(A)(1) of the Settlement Agreement, on January 7,
12  2016, LifeLock provided to GCG, via a File Transfer Protocol ("FTP") site, electronic files for
13  two separate data sets: (1) a list of all Class Members who were not also Subclass Members as
14  of December 17, 2015, and (2) a complete list of all Subclass Members. Additionally, on
15  January 21, 2016, LifeLock provided GCG with a supplemental data file containing a list of
16  Class Members who were not also Subclass Members who enrolled in a LifeLock identity theft
17  protection program after December 17, 2015. Each list was a .csv file containing the Class or
18  Subclass Member's (i) first and last name; (ii) last known mailing address, where available; and
19  (iii) last known email address, where available (the "Class Data"). GCG downloaded these files
20  directly from the FTP site and GCG did not provide the Class Data to Plaintiffs, Class Counsel,
21  or anyone other than GCG.

22       6.       GCG promptly loaded all the information LifeLock provided into a database
23  created for the purpose of Settlement Administration. GCG assigned unique identifiers to all
24  records to maintain the ability to track them throughout the Settlement Administration process.

- 2 -
DECLARATION OF LORI L. CASTANEDA

7. After analyzing the Class Data, GCG determined that there were 6,499,241 unique Class Members included in the Class Data provided by LifeLock. A total of 3,323,108 of the 6,499,241 records in the Class List were for Subclass Members. The remaining 3,176,133 were not Subclass Members.

## DISSEMINATION OF CLASS NOTICE BY EMAIL

8. Pursuant to Paragraph VII.65(A)(2) of the Settlement Agreement, GCG caused the Court-Approved Summary Notice to be formatted for electronic distribution by email to Class Members for whom an email address was provided in the Class Data. Attached hereto as **Exhibit B** is a template of the Court-Approved Summary Notice that GCG electronically disseminated to Class Members for whom an email address was provided in the Class Data ("Email Notice").

9. The Email Notice provided the Class Member with a link to the Settlement Website. GCG also followed standard email protocols, including utilizing "unsubscribe" links and GCG's contact information in the Email Notice. The contents of the Email Notice were reviewed to minimize SPAM triggers and were also run through a set of sender authentication mechanisms, such as SPF (Sender Policy Framework), DomainKeys, DKIM (DomainKeys Identified Mail), Barracuda, and SpamAssassin, to evaluate the probability that the email would encounter spam filtering issues. The evaluation scored the Email Notice content at 0.7 recognizing a score of under 5.0 is good. Finally, the Email Notice was distributed at a graduated level to maximize the deliverability rate to the available Class Members' email addresses.

10. GCG identified 5,820,155 Class Members in the Class Data who had an available email address. Additionally, many Class Members had multiple email addresses in the Class Data. After accounting for Class Members with multiple email addresses, GCG identified

5,977,723 Class Member email addresses. GCG sent the Email Notice to each Class Member at all available email addresses beginning on February 18, 2016, and concluded sending the Email Notice to Class Members who had an available email address on February 29, 2016.

11. GCG closely monitored all deliverability attempts of the Email Notice throughout the dissemination of the Email Notice to Class Members who had an available email address in the Class Data. Ultimately, 5,275,228 Email Notices of the 5,977,723 Email Notices that GCG sent to Class Members who had an available email address in the Class Data were not returned as undeliverable. GCG could not deliver a total of 702,495 Email Notices. A total of 478,971 Email Notices could not be delivered to Class Members because the email address no longer existed, the email account was closed, or the email address had a bad domain name or address error (collectively, "Hard Bouncebacks"). After three attempts, the remaining 223,524 Email Notices could not be delivered to Class Members due to an inactive or disabled account, the recipient's mailbox was full, technical auto-replies, or the recipient server was busy or unable to deliver (collectively, "Soft Bouncebacks").

## DISSEMINATION OF THE CLASS NOTICE BY MAIL

12. Pursuant to Paragraph VII.65(A)(2) of the Settlement Agreement, GCG was responsible for providing the Court-approved Summary Notice via postcard to Class Members for whom Email Notice was returned undeliverable and for whom LifeLock had not provided an email address in the Class Data.

13. GCG caused the Court-approved Summary Notice to be formatted for distribution by postcard to these Class Members. Attached hereto as **Exhibit C** is a template of the Court-approved Summary Notice that GCG disseminated by mail ("Postcard Notice").

14. There were a total of 1,288,501 Class Members whose Email Notice was undeliverable for one of the reasons set forth in Paragraph 11 above (*i.e.*, Hard Bouncebacks or

Soft Bouncebacks), or who did not have an email address in the Class Data but had a potentially valid mailing address.

15.     Pursuant to Paragraph VII.65(A)(3) of the Settlement Agreement, prior to mailing the Postcard Notice to these Class Members, GCG ran the mailing addresses in the Class Data for all Class Members through the National Change of Address ("NCOA") database maintained by the U.S. Postal Service.[2] To the extent that any Class Member had filed a U.S. Postal Service change of address request, the current address listed on the NCOA database was used in connection with the Postcard Notice mailing (rather than the mailing address in the Class Data). A total of 700,327 Class Member records in the Class Data sent through the NCOA database were updated with a new address.

16.     Pursuant to Paragraph VII.65(A)(5) of the Settlement Agreement, GCG promptly re-mailed Postcard Notices to all 2,153 Class Members for whom the U.S. Postal Service returned mail to GCG with forwarding information.

17.     Pursuant to Paragraph VII.65(A)(4) of the Settlement Agreement, GCG promptly performed Skip Traces consistent with industry standards to obtain address updates. With respect to the 99,246 Postcard Notices returned to GCG as undeliverable not bearing a forwarding address, GCG was able to update address information through Skip Tracing searches and re-mail Postcard Notices to 69,123 Class Members.

18.     As a result of these diligent efforts, as of May 12, 2016, there are only 32,073 of the 6,499,241 Class Members in the Class Data to whom an Email Notice could not be delivered, for whom no valid mailing address was available, and for whom no valid mailing address could

---

[2] The NCOA database is an official U.S. Postal Service technology product, which makes change of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mailstream. This product is an effective tool to update address changes when a person has completed a change of address form with the Post Office. The U.S. Postal Service maintains address information on the database for 48 months.

be located. Thus, over 99.5% of Class Members did not have their Summary Notice returned undeliverable, which is a very high direct notice deliverability rate.

## PUBLICATION NOTICE

19. Pursuant to Paragraph VII.65(C) of the Settlement Agreement, GCG caused the Summary Notice to be formatted and published in *USA Today* on February 23, 2016. Attached hereto as **Exhibit D** is a tear sheet featuring the formatted Summary Notice as seen in *USA Today*.

## SETTLEMENT WEBSITE

20. Pursuant to Paragraph VII.65(E) of the Settlement Agreement, on February 16, 2016, GCG launched the Settlement Website, www.ebarleclasssettlement.com, containing detailed information about the Settlement. A live "clickable" link to the Settlement Website was contained in the Email Notice and the complete URL was contained in the Postcard Notice. *See* **Exhibits B-C**.

21. When launched, the Settlement Website included a copy of the Long Form Class Notice, the Summary Notice, the Second Amended Complaint, the Settlement Agreement, the Motion for Preliminary Approval, the Preliminary Approval Order, the Order Regarding Revised Notices and Schedule of Settlement Dates, and various information about the Settlement, including an overview of the Settlement, important dates and deadlines, searchable answers to 26 frequently asked questions, and a contact information page for the Settlement Administrator. Class Members could also view and download a sample request for exclusion letter. Class Members could also download paper copies of the Claim Form from the Settlement Website and submit a Claim Form using an online portal. True and correct copies of the Long Form Class Notice and the Settlement Website are attached hereto as **Exhibits E and F**.

22. Pursuant to Paragraph XIII.97 of the Settlement Agreement, on March 21, 2016,

GCG uploaded onto the Settlement Website Plaintiffs' Notice of Motion and Motion for Attorney's Fees and Expenses and for Service Awards for Plaintiffs ("Fee Request"), as well as all declarations filed in support of the motion.

23. GCG has maintained and will continue to maintain and update the Settlement Website throughout the Settlement administration as required by the PA Order, the Settlement Agreement, and any future Court order. As of May 12, 2016, the Settlement Website has received 239,115 visits.

## SETTLEMENT TOLL-FREE NUMBER

24. Pursuant to Paragraph VII.65(F) of the Settlement Agreement, on February 16, 2016, GCG launched a toll-free telephone number, 1 (855) 907-3140 (the "Settlement Toll-Free Number"), with an Interactive Voice Response ("IVR") system, to accommodate inquiries regarding the Settlement. Since the launch date, callers have had the ability to listen to important information about the Settlement and to request copies of the Claim Form. The IVR system also provides callers with the ability to speak to a live operator during business hours.

25. As of May 12, GCG has received 37,071 calls related to this Settlement on the Settlement Toll-Free Number.

26. GCG has maintained and will continue to maintain the Settlement Toll-Free Number and update the IVR throughout the Settlement administration as required by the PA Order, the Settlement Agreement, and any future Court order.

## CLAIMS

27. Pursuant to Paragraph VIII.68 of the Settlement Agreement, Class Members who wished to make a claim for Twenty Dollars ($20.00) from the Class Fund were required to submit a completed Claim Form to the Settlement Administrator via email, via the Settlement Website, or via U.S. Mail, so that it was submitted or postmarked no later than April 29, 2016.

GCG established an email account on November 3, 2015, and a post office box on October 13, 2015, for the receipt of Claim Forms, exclusion requests, objections, and any other correspondence related to the Settlement.  As of May 12, 2016, GCG has received 163,382 timely Claim Forms and 1,042 late Claim Forms.  Pursuant to the Parties' request, all late Claim Forms have been treated as if they were timely submitted.

28. Pursuant to Paragraph VI.61 of the Settlement Agreement, on May 12, 2016, GCG provided to Class Counsel and LifeLock's Counsel a list of Valid Claimants and Settlement Subclass Members as of the date of the report (May 12, 2016), which included the member's name and total payment amount as calculated pursuant to Section VIII of the Settlement Agreement. This list identified 164,424 Valid Claimants, of whom 78,830 were Settlement Subclass Members and 85,594 were not Subclass Members, which cumulatively is a claims rate of approximately 2.5%.  Settlement Class Members will receive the following payments: (a) the 85,594 Valid Claimants who are not Settlement Subclass Members will receive $20 each pursuant to Paragraph VIII.68 of the Settlement Agreement, for an aggregate total of $1,711,880; (b) the 78,830 Settlement Subclass Members who are also Valid Claimants will receive $39.48 each pursuant to Paragraphs VI.58, VIII.68, and VIII.70 of the Settlement Agreement, for an aggregate total of $3,112,208.40; (c) the 3,242,431 Settlement Subclass Members who did not make Claims will receive $19.48 each pursuant to Paragraphs VI.58 and VIII.70 of the Settlement Agreement, for an aggregate total of $63,162,555.88.  In total, $67,986,644.28 will be paid to Class Members in this initial distribution with the remaining balance to be distributed to qualifying Valid Claimants on a *pro rata* basis as part of the second disbursement. Pursuant to Paragraph 63 of the Settlement Agreement, GCG anticipates the aggregate total of all benefit checks to be issued to qualifying Settlement Class Members will be $68 Million, if the Settlement is approved.

## OBJECTIONS AND OPT OUTS

29. Pursuant to Paragraph X.75 of the Settlement Agreement, Class Members wishing to object to the fairness, reasonableness, or adequacy of the Settlement or to the Fee Request had the option to submit written objections to the Settlement Administrator, emailed or postmarked no later than April 14, 2016.

30. As of May 12, 2016, GCG has received 57 timely objections and 3 late objections. A true and correct copy of the 57 timely objections is attached hereto as **Exhibit G**. A true and correct copy of the 3 late objections is attached hereto as **Exhibit H**.

31. Pursuant to Paragraph IX.71 of the Settlement Agreement, Class Members wishing to be excluded from the Settlement were required to submit written requests for exclusion to the Settlement Administrator, emailed or postmarked no later than April 14, 2016. Pursuant to the request of the Parties, a sample request for exclusion letter was included on the Settlement Website. A true and correct copy of the sample request for exclusion letter is attached as **Exhibit I**.

32. As of May 12, 2016 GCG has received 3,889 timely requests for exclusion and 30 late requests for exclusion from the Settlement. A true and correct copy of the list of Class Members who requested to be excluded from the Settlement is attached as **Exhibit J**.

33. Pursuant to Paragraph XI.84 of the Settlement Agreement, GCG provided weekly reports to Class Counsel and LifeLock's Counsel, which included the number of requests for exclusion received. Pursuant to Paragraphs IX.74 and X.76 of the Settlement Agreement, on April 22, 2016, GCG provided Class Counsel and LifeLock's Counsel with a list of all objections submitted by Class Members and Class Members who submitted timely and valid requests to exclude themselves from the Class.

DECLARATION OF LORI L. CASTANEDA

## ADMINISTRATIVE COSTS

34. As detailed above, GCG has completed dissemination of the Court-ordered Email Notice and mailed Postcard Notice, has processed and continues to process claims, and has maintained and continues to maintain and update the Settlement Website, the Settlement Toll-Free Number, and IVR. GCG's fees and expenses up to April 30, 2016, are approximately $1,181,000, which is billed directly to LifeLock. No portion of the fees or expenses incurred related to Settlement Administration will be paid from the $68 million Settlement Fund.

35. GCG will continue to administer the Settlement pursuant the Settlement Agreement and is prepared to make distributions to Settlement Subclass Members and Valid Claimants and handle all related follow-up through closure of this matter. Based on our review of the Settlement Agreement, GCG estimates remaining fees and expenses (consisting primarily of postage) will be approximately $1,655,000, which will be billed directly to LifeLock. If the scope of Settlement Administration or the project assumptions change, the aforementioned estimate will adjust accordingly.

*/s/ Lori L. Castaneda*

LORI L. CASTANEDA