LUANNE SACKS (SBN 120811)
lsacks@srclaw.com
**SACKS, RICKETTS & CASE LLP**
177 Post Street, Suite 650
San Francisco, CA 94108
Telephone: 415-549-0580
Facsimile: 415-549-0640

CYNTHIA A. RICKETTS (appearance *pro hac vice*)
cricketts@srclaw.com
**SACKS, RICKETTS & CASE LLP**
2800 North Central Avenue, Suite 1230
Phoenix, AZ 85004
Phone: (602) 385-3370
Fax: (602) 385-3371

Attorneys for Defendant
LifeLock, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAPOLEON EBARLE, JEANNE STAMM, BRIAN LITTON, and REINER JEROME EBARLE, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>LIFELOCK, INC., a Delaware corporation,<br><br>    Defendant | Case No. 3:15-CV-00258 HSG<br><br>**DEFENDANT LIFELOCK'S CONSOLIDATED RESPONSE TO OBJECTIONS TO PROPOSED CLASS ACTION SETTLEMENT** |

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................. 1

II.     SUMMARY OF THE OBJECTIONS .......................................................................... 3

III.    APPLICABLE LEGAL STANDARD ......................................................................... 5

IV.     ARGUMENT .................................................................................................................. 6

        A.      Objections to The Settlement's Value Should be Overruled ................................... 6

        B.      Objections Regarding Conflict of Laws Should be Overruled ............................... 9

        C.      Adequacy of Representation Objections Should be Overruled ............................. 11

        D.      The Objections Regarding Notice and The Claims Process Should be Overruled. 12

        E.      The Objections to The "Clear Sailing" and "Kicker" Provisions Should be
                Overruled ...................................................................................................... 13

        F.      The Other Miscellaneous And Individualized Objections Should be Overruled ... 15

V.      CONCLUSION ............................................................................................................. 15

i

**TABLE OF AUTHORITIES**

**Federal Cases**

*Altamirano v. Shaw Industries*, 2015  WL 2266680 (N.D. Cal. May 14, 2015) ................... 14, 15

*Amchem Products, Inc. v Windsor*, 521 U.S. 591 (1997) ............................................. 12

*Browning v. Yahoo! Inc.*, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ...................................... 8

*Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004).............................................7

*Glasser v. Volkswagen of Am. Inc.*, 645 F.3d 1084 (9th Cir. 2011) ...................................... 16, 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................... 12, 13, 18

*Huff v. Liberty League Int'l, LLC*, 2009 WL 1033788 (C.D. Cal. Apr. 14, 2009) ...................... 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*........................................................................... 3, 5

*In Re Cathode Ray Tube Antitrust Litig.*, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) .............. 13

*In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 633308 (N.D. Cal. Feb. 11, 2011) ................ 5

*In re Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009) .................................................... 16

*In re Ferrero Litig.*, 583 Fed. Appx 665 (9th Cir. 2014)............................................................ 14

*In re General Elec. Co. Securities Litig.*, 998 F. Supp. 2d 145 (S.D.N.Y. 2014).......................... 4

*In re Google Referrer Header Privacy Litig.*, 87 F. Supp.3d 1122 (N.D. 2015)................. 6, 8, 17

*In re Hydroxycut Marketing and Sales Practices Litig.*, 2013 WL 5275618 (S.D. Cal. Sept. 17, 2013) ................................................................................................................................. 4

*In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) ............................... 5

*In re LifeLock, Inc. Marketing and Sales Practices Litig.*, 2010 WL 3715138 (D. Ariz. 2010) ........................................................................................................................... 12, 15

*In re Linkedin User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ......................................... 9

*In re Lorazempam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002)................. 7, 18

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)................................................... 8

*In re Mercury Interactive Corp. Securities Litig.*, 618 F.3d 988 (9th Cir. 2010) ......................... 14

*In re Pacific Enterprises Securities Litig.*, 47 F.3d 373 (9th Cir. 1995)..........................................8

*In Re Pet Food Products Litig.*, 629 F.3d 333 (3d Cir. 2010) ......................................................14

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir.1998)..................13

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products*
  *Liability Litig.*, 2013 WL 3224585 (N.D. Cal. June 17, 2013)..........................................1

*In re Wal-Mart Wage & Hour Employment Practices Litig.*, 2010 WL 786513 (D. Nev. Mar. 8,
  2010) .................................................................................................................................5

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004).........................................13

*Jallo v. Midland Funding, LLC*, 2014 WL 5810203 (S.D. Cal. Nov. 6, 2014) ..........................11

*Lane v. Facebook*, 696 F.3d 811 (9th Cir. 2012)..........................................................2, 3, 11, 16

*Mazza v. American Honda Motor Co.¸* 666 F. 3d 581 (9th Cir. 2012)..........................................12

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .....7

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615 (9th Cir. 1982) ....................................2

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009)...........................................2, 7

*Schechter v. Crown Life Ins. Co.*, 2014 WL 2094323 (C.D. Cal. May 19, 2014)..........................7

*Shames v. Hertz Corp.*, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012).........................................15

*Spark v. MBNA Corp.*, 289 F. Supp. 2d 510 (D. Del. 2003)..........................................................5

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) .............................................8, 18

*United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990)...........................................................7, 17

*Villanueva v. Morpho Detection, Inc.* 2016 WL 1070523 (N.D. Cal. March 18, 2016) ...............8

*Vollmer v. Selden*, 350 F.3d 656 (7th Cir. 2003) ..........................................................................4

**Statutes**

28 U.S.C. § 1715(b) ........................................................................................................................3

**Rules**

Fed. R Civ. P. 23 ...........................................................................................................................11

Fed. R. Civ. P. 23(a) .....................................................................................................................15

iii

Fed. R. Civ. P. 23(a)(4) ............................................................................................ 11

Fed. R. Civ. P. 23(e) ............................................................................................ 2, 15

**Treatises**

Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges (3rd ed. 2010) ........................................................................................................ 4

Manual for Complex Litigation § 21.643 (4th ed.) ................................................ 4

iv

1

## I.      INTRODUCTION

2          "[I]inherent in the concept of settlement is trading a portion of a *possible* recovery for the

3    *certainty* of some recovery . . . Settlement is born of compromise, and settling plaintiffs trade the

4    risk of recovering nothing for a reward that is necessarily less than their full *potential* recovery."

5    *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products*

6    *Liability Litig.,* No. 10-ml-02151, 2013 WL 3224585 *14 (N.D. Cal. June 17, 2013) (overruling

7    objection to overall fairness and sufficiency of settlement) (emphasis in original).  The proposed

8    Settlement[1] achieves precisely this laudable goal: it provides significant *certain* recovery—

9    between $19.48 and $39.48—to more than 3.4 million Settling Class Members.  Declaration of

10   Lori Castaneda Regarding Notice and Settlement Administration ("Settlement Administrator

11   Decl.") ¶ 28.

12          Given the magnitude of benefits the Settlement affords, it is not surprising that less than

13   *one one-thousandth of a percent (.0009%)* of nearly 6.5 million total Class Members objected to

14   the Settlement (the "Objectors").[2]  Of the 60 Objectors, 29 contested in some manner the

15   Settlement's overall fairness ("the Fairness Objectors"), while the other 31 challenged solely

16   Plaintiffs' Motion for Attorney's Fees and Expenses and for Service Awards ("Fee Motion").

17   Notably, 6 of the Fairness Objectors argue that LifeLock is paying the Class Members too much!

18   These 6 individuals "enjoy their services" and question whether this litigation is a means of

19   "extorting a legitimate business" with the consequence of "increase[ing] costs" to LifeLock of

20   providing these desired services.  *See, e.g.,* Objectors S. Hess, D. Dalton, W. Duvall, S. Froggett,

21   and M. Menza.  Most of the remaining 23 Fairness Objectors generally contend that only a

22   settlement providing Class Members with a full refund of all membership fees would be

23

24   [1]  All capitalized terms not defined herein are intended to have the same meaning as defined in
     the Class Action Settlement Agreement ("SA") [Dkt. 49-1].
25   [2]  The Court-appointed Settlement Administrator, Garden City Group, LLC ("GCG"), received
26   57 timely objections and 3 late objections.  Copies of all objections received are attached as
     Exhibits G and H to the Settlement Administrator Decl. The three late objections are from Julie
27   Toth, Wanda Isaacs, and Dianne Roholt.

28                                                    1

1    adequate or fair.  These Fairness Objectors completely ignore the fundamental precept that a

2    settlement is inherently a compromise of contested claims, under which a reduced recovery is

3    received in exchange for avoidance of the substantial risk, expense, and delay that will inevitably

4    result from continued litigation.

5        The Settlement is fair, reasonable, and adequate within the meaning of Fed. R. Civ. P.

6    23(e).  The Settlement is the result of arm's-length negotiations over the course of many months,

7    assisted by the highly respected and skilled mediator, Justice Howard Wiener (Ret.).  *See*

8    *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (Reviewing courts should

9    "put a good deal of stock in the product of an arms-length, non-collusive, negotiated

10   settlement.").  The Settlement affords significant benefits—between $19.48 and $39.48—to

11   more than 3.4 million Settling Class Members.  Settlement Administrator Decl. ¶ 28.

12   Accordingly, most Settling Class Members will receive as much or more than the amount they

13   paid for one month of enrollment in a LifeLock identity theft protection plan.  Declaration of

14   Luanne Sacks ("Sacks Decl."), ¶ 31.  When these significant benefits are weighed against the

15   certainty of delay from protracted litigation and potential appeals, the benefits are indisputably

16   fair and adequate.

17       Final approval of a class settlement does not turn on whether the proposed settlement is

18   "perfect in the estimation of the reviewing court" or "satisf[ies] every [class member]."  *Lane v.*

19   *Facebook*, 696 F.3d 811, 818-19, 824 (9th Cir. 2012); *see also Officers for Justice v. Civil Serv.*

20   *Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982) ("The proposed settlement is not to be judged

21   against a hypothetical or speculative measure of what might have been achieved by the

22   negotiators").  Instead, as the Ninth Circuit has observed, "[i]t may be unavoidable that some

23   class members will always be happier with a given result than others." *Id*. at 624. This case is no

24   exception.  A settlement, which is necessarily a compromise, need not satisfy every Class

25   Member.  *Lane*, 696 F.3d at 824.  It is for this very reason that "individual members [are] . . .

26   given an opportunity to opt out."  *Id*.  Here, the Fairness Objectors provide no compelling reason

27

28

**DEFENDANT LIFELOCK'S CONSOLIDATED RESPONSE TO**
**OBJECTIONS TO PROPOSED SETTLEMENT**
**CASE NO. 3:15-CV-00258 HSG**

1   for the Court to reject the Settlement as unfair or inadequate "to the class as a whole." *Id.*

2   Accordingly, the Court should overrule all objections and grant final settlement approval.

3   **II.   SUMMARY OF THE OBJECTIONS**

4           Class Members' reaction to the Settlement was overwhelmingly positive.  Equally

5   importantly, no governmental entity or official objected to or voiced any concerns about the

6   Settlement, despite notice of the proposed Settlement being provided on November 13, 2015,

7   pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA Notice").  *See*

8   Settlement Administrator Decl., ¶ 4.  Indeed, the Federal Trade Commission ("FTC") signaled its

9   approval of the Settlement when it agreed that $68 million of the $100 million LifeLock

10  deposited with the Court's registry, as part of LifeLock's stipulated Consent Decree to resolve

11  the FTC's separate contempt proceeding ("FTC Settlement"), could be used to fund this

12  Settlement.  *See* Notice of Entry of Order in *Federal Trade Commission v. LifeLock, Inc.* [Dkt.

13  56].

14          20 Class Members and 40 Subclass Members objected.  Of these, at least four are

15  "canned" objections filed by professional or serial objector attorneys.[3]  Attorneys Steven

16  Helfand, Christopher Bandas, John Pentz, Steve Miller, Jonathon Fortman, and John C. Kress

17  (collectively, the "Professional Objector-Attorneys"), represent Class Members Antonia

18  Carrasco, Walter Ellingwood, Teri Niemeyer, and James Pentz.  As their long history of

19  improper conduct and checkered pasts make clear, their objections are patently in bad faith and

20  their end goal is clear—"to get paid to go away," a tactic courts have aptly labeled "extortion" in

21  the context of class action settlements.  *Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003).

22          The Federal Judicial Center has warned courts to "watch out . . . for canned objections"

23  like those filed by the Professional Objector-Attorneys and to be "wary of self-interested

24  _____

25  [3] *See In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (describing
    objector attorney Christopher Bandas and stating that a "'professional' or 'serial' objector" as an
26  attorney who "routinely represents objectors purporting to challenge class action settlements, and
    does not do so to effectuate change to settlements, but does so for his own personal financial
27  gain.")

28                                                    3

professional objectors who often present rote objections . . ." Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges, at 17, 36 (3rd ed. 2010); *see also In re General Elec. Co. Securities Litig.*, 998 F. Supp. 2d 145, 152 (S.D.N.Y. 2014) ("[P]rofessional objectors to class action settlements may extort payments from a class simply by filing frivolous appeals."); *In re Hydroxycut Marketing and Sales Practices Litig.*, Nos. 09-md-2087, 09-cv-1088, 2013 WL 5275618, at *5 n.3 (S.D. Cal. Sept. 17, 2013) ("some objections, however, are made for improper purposes, and benefit only the objectors and their attorneys") (quoting Manual for Complex Litigation § 21.643 (4th ed.)) (appeal pending)..

The Professional Objector-Attorneys have collectively objected to more than 80 class action lawsuits and are routinely admonished for their improper conduct by courts.[4]  The Court should overrule these professional objections, which are brought for no purpose other than to secure fees in exchange for agreeing not to pursue an appeal.  For instance, John Pentz, who represents Class Member James Pentz, has a long history of filing "frivolous" objections on behalf of family members and being criticized by courts.  *See, e.g., In re Charles Schwab Corp. Sec. Litig.*, No. 08-cv-01510, 2011 WL 633308, at *6 (N.D. Cal. Feb. 11, 2011) (noting that objector's motion to intervene "would not be in the best interests of the class but rather would only be in Attorney Pentz's best interest"); *In re Wal-Mart Wage & Hour Employment Practices Litig.*, No. 06-cv-00225, 2010 WL 786513, at *1 (D. Nev. Mar. 8, 2010) (ordering Pentz's clients to post a million dollars in appeal bonds and noting his "documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals" once compensated); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 497 n.219 (S.D.N.Y. 2009) (collecting cases in which Pentz "has been criticized by courts for his canned objections"); *Spark v. MBNA Corp.*, 289 F. Supp. 2d 510, 514 (D. Del. 2003) (observing

---

[4] *See* Sacks Decl., Exhibits 2 – 5 for a list of class action settlements to which the Professional Objector-Attorneys have filed objections.  Notably, despite an exhaustive search, counsel for LifeLock has been unable to locate a single instance in which any court has found any of these attorneys to be adequate to serve as class counsel in a class action.  Moreover, professional objectors' motives are inherently suspect.

4

that "objector's 'opposition' to class counsel's fee petition appears to be nothing more than [Pentz's] attempt to receive attorneys' fees").

The other Professional Objector-Attorneys have a similar history before this Court and others.  *See, e.g.*, *In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. at 533  ("Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct"). Class members undoubtedly have the right to present objections to the fairness of a class action settlement that affects their rights. However, bad faith objections must be viewed with the skepticism they warrant and should be summarily overruled.

The Fairness Objections fall into the following categories:

- 6 objectors assert the lawsuit is without merit and/or the settlement is unfair to LifeLock.  (Objections of W. Duvall, S. Froggett, S. Hess, M. Menza, C. Petrey, and V. Petrey).

- 15 objectors challenge the settlement benefits as insufficient.  (Objections of B. Cochran, D. Dalton, W. Ellingwood, L. Feldhacker, S. Handley, J. Hinojosa, R. Johnson, G. Johnson, J. Johnson, R. Johnson, Z. Milby, T. Niemeyer, J. Piazza, L. Pierre, and J. Premice).

- 3 objectors claim the notice and/or claim process is deficient.  (Objections of B. Cochran, W. Ellingwood, and J. Gross).

- 1 objector claims there is intra-class conflict creating adequacy of representation issues.  (Objection of A. Carrasco).

- 1 objector claims the Settlement does not account for choice of law issues. (Objection of M. Robinson).

- 3 objectors claim the Settlement is *per se* unfair because it contains a so-called "clear sailing provision" and purported "kicker."  (Objections of B. Cochran, W. Ellingwood, and J. Gross).

**III.     APPLICABLE LEGAL STANDARD**

5

1    The Fairness Objectors have the burden of demonstrating the Settlement is not fair,

2    adequate, and reasonable. *See In re Google Referrer Header Privacy Litig.*, 87 F. Supp.3d 1122,

3    1137 (N.D. 2015) ("[O]bjectors to a class action settlement bear the burden of proving any

4    assertions they raise challenging the reasonableness of a class action settlement.") (citing *United*

5    *States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990)); *Schechter v. Crown Life Ins. Co*., No. 13-

6    cv-05596, 2014 WL 2094323, at *2 (C.D. Cal. May 19, 2014) (burden is on party challenging

7    settlement to demonstrate, if he can, that settlement is so far "out of the ballpark" that it is

8    inconsistent with the equitable objectives of approval) (citations and quotations omitted).

9    As a starting point, the absence of a large number of objections, as a percentage of the

10   total class size, raises a strong presumption that a settlement is favorable to the class. *See Nat'l*

11   *Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is

12   established that the absence of a large number of objections to a proposed class settlement action

13   raises a strong presumption that the terms of a proposed class action settlement are favorable to

14   the class members.") (citations omitted); *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577

15   (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 (i.e., .05%) class

16   members objected); *Rodriguez*, 563 F.3d at 967 (finding favorable class reaction of the class

17   where only 54 of 376,301 (i.e., .014%) class members objected). Here, the paucity of objectors

18   (.0009%) invokes the presumption of fairness.

19   Most Fairness Objectors' cursory and vague challenges are devoid of any factual or legal

20   support or analysis and on this basis alone should be summarily overruled. *See, e.g., In re*

21   *Lorazempam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 378 (D.D.C. 2002) (rejecting

22   unsupported objections because they are "of little aid to the Court"). In any event, in the face of

23   the fairness presumption, the Fairness Objectors have failed completely to carry their burden.

24   **IV.    ARGUMENT**

25        **A.    Objections to The Settlement's Value Should be Overruled**

26   "The reasonableness of a proposed settlement is assessed by comparing the present value

27   of the damages plaintiffs would likely recover if successful [at trial], appropriately discounted for

28

6

1   the risk of not prevailing . . . with the amount of the proposed settlement." *Sullivan v. DB*

2   *Investments, Inc.*, 667 F.3d 273, 323-24 (3d Cir. 2011) (internal quotation marks omitted).  A

3   reviewing court "may presume that through negotiations, the Parties, counsel, and mediator

4   arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *In*

5   *re Google Referrer Header Privacy Litig.,* 87 F. Supp.3d 1122, 1131 (N.D. Cal. 2015) (internal

6   quotations and citations omitted) (appeal pending); *see also In re Pacific Enterprises Securities*

7   *Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better

8   positioned than courts to produce a settlement that fairly reflects each party's expected outcome

9   in litigation.").  "It is well-settled law that a cash settlement amounting to only a fraction of the

10  potential recovery does not per se render the settlement inadequate or unfair." *Villanueva v.*

11  *Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523 *4 (N.D. Cal. March 18,

12  2016) (Gilliam) (granting final approval of class action where net settlement amount was less

13  than 25% of maximum recovery) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459

14  (9th Cir. 2000)); *Browning v. Yahoo! Inc.*, No. 04-cv-01463-HRL, 2007 WL 4105971, *5 (N.D.

15  Cal. Nov. 16, 2007) (overruling objection to settlement value because "settlement, as a product

16  of compromise, typically offers less than a full recovery.").

17      Certain Fairness Objectors nonetheless complain that the Settlement does not provide a

18  100% refund (or in some cases greater than 100%) of the membership fees paid to LifeLock.

19  *See, e.g.*, Objection of L. Feldhacker ("I will not settle for less than THREE MILLION

20  DOLLARS.") (emphasis in original).  These Fairness Objectors ignore entirely the substantial

21  risk, expense, complexity, and likely duration of further protracted litigation—including the

22  significant pre-trial procedural challenges LifeLock is prepared to bring including a motion to

23  dismiss,[5] motion for summary judgment, and a vigorous opposition to class certification.  *See*

24

25  [5] Indeed, LifeLock filed its Motion to Dismiss Complaint on March 6, 2015.  Rather than
    respond substantively to the motion, Plaintiffs instead chose to file an amended complaint that
26  addressed some, but not all, of the arguments on which LifeLock believes it will be successful
    absent settlement.  *See* Notice of Motion and Motion to Dismiss Complaint; Memorandum of
27  Points and Authorities in Support Thereof [Dkt. 24].

28                                       7

1   Sacks Decl. ¶¶ 23-28.  Any one of these procedural steps and any success by Plaintiffs at any

2   ultimate trial could involve an appeal.  *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587

3   (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what

4   could potentially be achieved through ultimate success on the merits, has value to a class,

5   especially when compared to risky and costly continued litigation.").  More important, these

6   Fairness Objectors ignore the very real value LifeLock confers to all Class Members through the

7   identity theft protection services it provided.  At no time has the Class contended that LifeLock

8   failed to provide *any* value in exchange for the membership fees it received.  To the contrary, the

9   essence of the Class claims is that LifeLock's identity theft protective services were at times not

10  afforded on a 24/7 basis involving all possible financial institutions.  *See generally* Second

11  Amended Complaint ("SAC") [Dkt. 73].  Accordingly, there is no plausible basis upon which the

12  Fairness Objectors may assert that they are entitled to a full refund of all membership fees paid.

13      The Settlement correctly reflects the very substantial litigation hurdles the Class would

14  face absent the proposed compromise.  As discussed in the Class Representatives' Final

15  Approval Motion, LifeLock denies any liability and in particular denies that it engaged in any

16  intentional "throttling" (i.e., system delays) of alerts and also maintains that it provides the most

17  comprehensive identity theft protection services available on the market.  Sacks Decl. ¶ 27.

18  LifeLock also contends that any inadvertent delays in the delivery of alerts did not result in any

19  harm in the form of actual credit fraud or identity theft such that the Class Members did not

20  suffer any injury.  *Id.*  Further, should the Class ultimately establish liability and some

21  consequent injury, the substantial benefits and services received by each Class Member would

22  afford LifeLock an offset against any asserted damages.  *Id.*  Finally, LifeLock contends that the

23  variances in the representations that Class Members saw and whether and to what extent each

24  Class Member relied on the varying representations and thus any injury each Class Member may

25  have suffered makes class certification highly unlikely.  *Id.*  In contrast to the certainty of

26  protracted litigation and risk, additional costs, and likely appeals, the immediate and definite

27  benefits available to the Class through the proposed Settlement are more than fair and adequate.

28

8

1    Some Fairness Objectors nonetheless contend that the Settlement's value is somehow

2    diminished because it was funded in part from the proceeds of a $100 million payment by

3    LifeLock to settle the FTC's parallel false advertising allegations.  *See, e.g.*, Objection of W.

4    Ellingwood.  Of course, this completely ignores the fact that the FTC's allegations were asserted

5    for the benefit of LifeLock members who are included in the Class.  *See* Notice of Entry of Order

6    in *Federal Trade Commission v. LifeLock, Inc.* [Dkt. 56], Ex. A, Order p. 3.

7        Nor do these Fairness Objectors explain how, if at all, any of the $100 million paid to the

8    FTC would have benefitted Class Members directly *absent* the proposed Settlement here.  And,

9    notably, the FTC has implicitly accepted the proposed Settlement by agreeing that LifeLock may

10   fund it from monies deposited in connection with the FTC Settlement. *Id.*

11       Accordingly, the Fairness Objectors have failed to carry their burden to demonstrate they

12   would likely have recovered more through continued litigation than through the proposed

13   Settlement, requiring that these objections be overruled.  *Lane*, 696 F.3d at 824 (individual class

14   member's potential for greater recovery "does not itself render [a] settlement unfair").

15       **B.     Objections Regarding Conflict of Laws Should be Overruled**

16       Of the nearly 6.5 million Class Members, a lone objector alleges that California law

17   should apply rather than Arizona law and that, in any event, the Court should deny final approval

18   because the Settlement does not address the differences among consumer fraud statutes across

19   each of the 50 states.  *See* Objection by M. Robinson.  This objection lacks merit.

20       First, the lone objector provides no justification in law or fact that California law, instead

21   of Arizona law, should apply.  Indeed, the proper application of Arizona law is beyond dispute.

22   First, when enrolling in a LifeLock identity theft protection plan, each Class Member agreed that

23   Arizona law would govern the parties' relationship.  SAC [Dkt. 73] ¶ 7.  Second, under any

24   choice of law analysis, Arizona law would necessarily apply in light of LifeLock's residence in

25   Arizona, the fact that the subject advertising regarding its identity theft protection services

26   emanated from Arizona, and the lack of conflict with California consumer fraud statutes.  *See,*

27   *e.g., Jallo v. Midland Funding, LLC*, No. 14-cv-352-BEN (NLS), 2014 WL 5810203 (S.D. Cal.

28

9

1   Nov. 6, 2014) (enforcing Arizona choice of law provision); *Huff v. Liberty League Int'l, LLC*,

2   No. 08-cv-1010-VAP (SSx), 2009 WL 1033788, at *6 (C.D. Cal. Apr. 14, 2009) (enforcing

3   Arizona choice of law because plaintiffs failed to meet their burden that applying Arizona law

4   would frustrate California consumer protections).  The original complaint and the operative

5   complaint, the SAC, acknowledge the enforceability of the Arizona choice of law provision and

6   accordingly raise only claims premised on Arizona law.  *See* Complaint [Dkt. 1]; SAC [Dkt. 73].

7   Indeed, no one other than the lone objector has contended that any state's law other than Arizona

8   governs the Class claims.  *Id*.  This is not surprising, given that the proper application of Arizona

9   law to a settlement of nationwide false advertising class claims against LifeLock has already

10  been confirmed within this Circuit.  *See In re LifeLock, Inc. Marketing and Sales Practices

11  Litig.*, No. 08-1977-MHM,  2010 WL 3715138 (D. Ariz. 2010) (granting final approval to a

12  nationwide class against LifeLock where substantially the same Arizona choice of law provision

13  as is at issue here governed the relationship between class members and LifeLock).

14          Finally, even if application of Arizona law was disputable, the purported state law

15  variances referenced by the lone objector pose no impediment to final approval: Rule 23's

16  manageability requirement is inapplicable in the settlement context.  *See Amchem Products*, *Inc.

17  v Windsor*, 521 U.S. 591 (1997) ("confronted with a request for settlement-only class

18  certification, a district court need not inquire whether the case, if tried, would present intractable

19  management problems, for the proposal is that there be no trial.").  Courts routinely approve

20  nationwide settlements where, as here, common questions of the defendant's conduct

21  predominate over variations in state laws.  *See, e.g., Amchem Products*, *Inc.*, 521 U.S. at 591;

22  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).[6]

23

24  _____
[6] Fairness Objector Robinson relies heavily on *Mazza v. American Honda Motor Co.*¸ 666 F. 3d
25  581 (9th Cir. 2012); *see* Objection by M. Robinson, pp. 5-6, for the proposition that variances in
    states law preclude final approval.  This reliance is misplaced.  *Mazza* is patently distinguishable
26  as it did not involve a settlement but rather class certification prior to settlement.  Fairness
    Objector Robinson also erroneously focuses exclusively on consumer protection statute claims
27  and ignores Plaintiffs' breach of contract, declaratory relief, and unjust enrichment claims—for

28
                                          10
    _____

## C.      Adequacy of Representation Objections Should be Overruled

Rule 23's adequacy requirement "seeks 'to uncover conflicts of interest between named parties and the class they represent.'"  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004) (emphasis added) (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 313 (3d Cir.1998)).  "[V]aried relief among class members with differing claims in class settlements is not unusual," and it does not, without more, establish an impermissible conflict.  *Id*.  Here, one Fairness Objector, without identifying any specific conflict, presents a cursory objection based on alleged "Intra-Class Conflicts And Adequacy of Representation." *See* Objection of A. Carrasco.  This Objection lacks merit.

First, the Fairness Objector does not explain (because she cannot) how any differences in potential remedies have created an actual conflict among Subclass Members and other Class Members.  *See* Order Granting Preliminary Approval [Dkt. 57] ("PA Order"), p. 7 ("No evidence in the records suggests that Plaintiffs or proposed class counsel have a conflict of interest with other Class Members.").  Indeed, the Class Members, Subclass Members, and Class Representatives (one of whom represents the Subclass Members) have similar and aligned interests in demonstrating LifeLock's alleged liability.  *See Hanlon*, 150 F.3d at 1021 (Rule 23(a)(4) adequacy satisfied where each "plaintiff has the same problem.").  "The mere fact that relief varies among the different groups of class members does not demonstrate conflicting or antagonistic interests within the class or adequacy of representation issues.  Nor does the fact that the settlement fund allocates a larger percentage of the settlement to certain class members."  *In Re Cathode Ray Tube Antitrust Litig.*, No. 07-cv-5944-JST, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) (report and recommendation of special master) (citing *In Re Pet Food Products Litig.*, 629 F.3d 333 (3d Cir. 2010)); *see also Altamirano v. Shaw Industries*, No. 13-cv-00939-HSG, 2015 WL 2266680, *5 (N.D. Cal. May 14, 2015) (Gilliam) (denying preliminary approval of class action settlement that fails to differentiate between class members with different potential

which concerns regarding variance among states is further mitigated.  *See* Objection by M. Robinson, pp. 3-6.

11

damages).  Thus, the objection based on a supposed conflict among the Class and the Subclass fails to refute the Class Representatives' valid explanation for differing benefits[7] and must be overruled.

### D.     The Objections Regarding Notice and The Claims Process Should be Overruled

Three Fairness Objectors argue that the Court-approved notice program was deficient and Class Members should not have been required to file a claim to receive a Settlement payment. *See* Objections of B. Cochran, E. Ellingwood, and J. Gross.  Specifically, these objectors contend the notice was deficient because there was insufficient information to perform a lodestar calculation concerning Class Counsel's requested fees and expenses.  This objection has no merit because the notice explicitly informed Class Members that Class Counsel's complete fee and service award application would be available on the Settlement Website nearly a full month before objections were due.  *See In re Mercury Interactive Corp. Securities Litig.*, 618 F.3d 988, 995 n.2 (9th Cir. 2010) (implying that 14 days is sufficient time between the filing of a fee motion and the objection deadline); *accord In re Ferrero Litig.*, 583 Fed. Appx 665, 667-68 (9th Cir. 2014); *see also In re LifeLock, Inc. Marketing and Sales Practices Litig.*, No. 08-1977, 2010 WL 3715138 at *10 (advanced notice of fee motion not strictly required if settlement does not involve a "common fund" because proposed fee award has no effect on benefits to the class). Consistent with the representations in the comprehensive Court-approved notice, Plaintiffs' Fee Motion, complete with declarations, billing rates, and lodestar calculations, was made available on the Settlement website on March 21, 2016.  *See* Settlement Administrator Decl., ¶ 22.

Another Objector contends, without explanation, that Class Members should not be required to submit a claim to obtain Settlement benefits.  *See* Objection of B. Cochran.[8]  A claims-made settlement does not render the Settlement unfair.  *Shames v. Hertz Corp.*, No. 07-

---

[7] "No evidence in the records suggests that Plaintiffs or proposed class counsel have a conflict of interest with other Class Members."  PA Order [Dkt. 57], p. 7.

[8] This Fairness Objector is a Subclass Member who was not required to file a claim to obtain a Settlement benefit, however, and accordingly lacks standing to make this objection.

cv-2174, 2012 WL 5392159 *12 (S.D. Cal. Nov. 5, 2012) ("there is nothing inherently objectionable with a claims-submission process, as class action settlements often include this process and courts routinely approve claims made settlements.").  Instead, concerns regarding a claims-made process are particularly mitigated in situations, such as here, where no money allocated to the Class could revert to LifeLock regardless of the claims rate.  Moreover, the Class Members who have the greatest potential damages—the Subclass Members such as this Fairness Objector—will automatically receive a Settlement payment, if the Settlement is approved, without the need to file a claim.  SA [Dkt. 49-1] ¶ 58; *see also Altamirano*, No. 13-cv-00939-HSG, 2015 WL 2266680 at *5 (denying preliminary approval of class action settlement that fails to differentiate between class members with different potential damages).  Finally, a claims process coupled with the fact that no amount of the $68 Million Settlement payment reverts to LifeLock, but is instead distributed on a *pro rata* basis among Subclass Members and Class Member claimants ensures the Settlement benefits are directed in greater proportion to those Class and Subclass Members who feel particularly aggrieved.  *See, e.g.,* Objection of S. Weiland ("I haven't been injured by any LifeLock false claims. Why don't any rewards go exclusively to those who've actually been injured . . ."); S.J. Froggett ("I have not been harmed by LifeLock Inc.").

     **E.**     **The Objections to The "Clear Sailing" and "Kicker" Provisions Should be Overruled**

     A few Fairness Objectors contend the payment of attorneys' fees and costs in addition to, rather than as part of, the Settlement Fund allocated to Class Members renders the Settlement unfair.  *See* Objections of A. Carrasco, W. Ellingwood, S. Handley.  Contrary to the Objectors' contentions, a "clear sailing" provision of the sort in the Settlement does not render the Settlement inherently unfair or inadequate.  "[S]ettlement agreement[s] typically include a 'clear sailing' clause."  *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 553 (2009) (internal quotation marks omitted); *see also Lane*, 696 F.3d at 832.  A "clear sailing" provision's purpose is "to facilitate settlements and avoid a conflict, and yet it gives the defendant a predictable

1    measure of exposure of total monetary liability for the judgment and fees in a case.  To the extent

2    it facilitates completion of settlements, this practice should not be discouraged." *In re Consumer*

3    *Privacy Cases*, 175 Cal. App. 4th at 553 (quotations and citation omitted).  More importantly, the

4    amount of attorneys' fees to be awarded remains solely in the Court's discretion.  SA [Dkt. 49-

5    1], ¶¶ 97-100.

6          Second, the Settlement benefits the Class by creating a $68 million fund for the exclusive

7    benefit of Class Members. Unlike a settlement wherein attorney's fees and costs are taken from

8    the amount set aside for class members, in this matter any fee and cost award to Class Counsel

9    will *not* reduce the Settlement benefits to be received by Settlement Class Members nor reduce

10   the Settlement amount paid by LifeLock.  *See, e.g., Glasser v. Volkswagen of Am. Inc.*, 645 F.3d

11   1084, 1088-89 (9th Cir. 2011) ("When attorneys' fees are paid out of a common fund . . . any

12   reduction in the fee award results in an increase to the class recovery.").  In this matter, an

13   attorneys' fee award has no bearing on settlement benefits paid to the class.  *Id.*

14         Here, the Settlement was structured to *maximize* the amount of money paid to Class and

15   Subclass Members:  regardless of any attorneys' fees and costs awarded to Class Counsel, the

16   exact same amount—$68 Million—is distributed to qualifying Settlement Class Members.  SA

17   [Dkt. 49-1], ¶¶ 58; Sacks Decl. ¶¶ 18-20.  No amount of the $68 Million reverts to LifeLock

18   under any circumstance.  SA [Dkt. 49-1], ¶¶ 58, 69-70.[9]  Thus, none of the contemplated

19   payments to the Class will revert to LifeLock.  These Fairness Objectors' arguments are nothing

20   more than a misplaced patchwork of legal principles that have no application here.  Accordingly,

21   nothing about the Parties' fee agreement undermines the Settlement's overall fairness.

22   _____

23   [9]The Parties' originally contemplated settlement agreement provided for a $68 million "common
     fund" to pay settlement benefits to the Class Members, attorneys' fees, expenses, service awards,
24   and administration costs.  *See* Sacks Decl. ¶ 18.  During subsequent negotiations regarding the
     Settlement's final terms, LifeLock agreed to separately pay attorneys' fee, expenses, service
25   awards, and administrative costs, leaving the entire $68 million for distribution, on a *pro rata*
     basis, to Class Members consistent with the Settlement's terms.  *Id.* ¶ 19.  This demonstrates
26   conclusively that the Parties did not negotiate a settlement that would "kick back" any sums
     requested but not awarded as attorneys' fees or costs.
27
28                                                    14

**F.     The Other Miscellaneous And Individualized Objections Should be Overruled**

Several Fairness Objectors failed to provide any stated basis for their challenges.  *See In re Google Referrer Header Privacy Litig.*, 87 F.Supp.3d 1122 ("[O]bjectors to a class action settlement bear the burden of proving any assertions they raise challenging the reasonableness of a class action settlement.") (citing *United States v. Oregon*, 913 F.2d at 581).  Accordingly, these cursory objections regarding the litigation and Settlement must be summarily overruled.  The Court has already considered the Settlement's relative value and provisionally found that the Settlement met Rule 23(e)'s fairness requirements and Rule 23(a)'s certification requirements.  *See generally* PA Order [Dkt. 57].  Further, these objections do not aid the Court in evaluating the Settlement as they are mere conjecture, inherently flawed, lack sufficient analysis, and do not outweigh the Settlement's clear benefits.  *See In re Lorazempam & Clorazepate Antitrust Litig.*, 205 F.R.D. at 378 (rejecting unsupported objections because they are "of little aid to the Court"); *Hanlon*, 150 F.3d at 1027 (question on final approval is not whether the Settlement "could be prettier, smarter, or snazzier," but solely "whether it is fair, adequate, and free from collusion").  The substantial risk, expense, and delay that will inevitably confront the Class Representatives and the Class if this litigation continues, absent the Settlement, further outweigh these objections. *See Sullivan*, 667 F.3d at 323-24.

**V.     CONCLUSION**

For these reasons, LifeLock respectfully requests that the Court overrule each Objection to the Settlement and enter an order granting final approval of the Settlement.

RESPECTFULLY SUBMITTED this 13th day of May, 2016.

SACKS, RICKETTS & CASE LLP

By: s/Luanne Sacks
        LUANNE SACKS
        CYNTHIA RICKETTS
        Attorneys for Defendant
        LifeLock, Inc.

15