```
                                        PAGES 1 - 13

              UNITED STATES DISTRICT COURT

            NORTHERN DISTRICT OF CALIFORNIA

       BEFORE THE HONORABLE HAYWOOD S. GILLIAM

NAPOLEON EBARLE AND JEANNE STAMM,    )
ON BEHALF OF THEMSELVES AND ALL      )
OTHERS SIMILARLY SITUATED,           )
                                     )
            PLAINTIFFS,              )
                                     )
  VS.                                ) NO. C 15-CV-00258 HSG
                                     )
LIFELOCK, INC., A DELAWARE           )
CORPORATION,                         )
                                     ) SAN FRANCISCO, CALIFORNIA
            DEFENDANT.               ) THURSDAY
                                     ) DECEMBER 17, 2015
_____)
```

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  4:07 P.M. – 4:17 P.M.**

**APPEARANCES:**

**FOR PLAINTIFFS**          LIEFF, CABRASER, HEIMANN & BERNSTEIN
                            275 BATTERY STREET, 29TH FLOOR
                            SAN FRANCISCO, CALIFORNIA  94111
                    **BY:   MICHAEL W. SOBOL, ESQUIRE
                            NICOLE DIANE SUGNET, ESQUIRE**

                            CARNEY, BATES & PULLIAM
                            2800 CANTRELL ROAD, SUITE 510
                            LITTLE ROCK, ARKANSAS  72202
                    **BY:   JOSEPH HENRY BATES, III, ESQUIRE**

(FURTHER APPEARANCES ON FOLLOWING PAGE)


*REPORTED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
               *RETIRED OFFICIAL COURT REPORTER, USDC*

**APPEARANCES (CONTINUED):**

**FOR DEFENDANTS**          SACKS, RICKETTS & CASE
                            177 POST STREET, SUITE 650
                            SAN FRANCISCO, CALIFORNIA  94108
                       **BY: LUANNE SACKS, ESQUIRE**
                            **AMIT RANA, ESQUIRE**

                            SACKS, RICKETTS, & CASE
                            2800 NORTH CENTRAL AVENUE, SUITE 1230
                            PHOENIX, ARIZONA  85004
                       **BY: CYNTHIA A. RICKETTS, ESQUIRE**

```
1    THURSDAY, DECEMBER 17, 2016                         4:03 P.M.
2    (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSEL'S FAILURE TO
3    IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER
4    ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)
5                           PROCEEDINGS
6                           ---O0O---
7         THE CLERK:  WE'RE CALLING C 15-00258, EBARLE, ET AL.,
8    VERSUS LIFELOCK, INC.
9         PLEASE STEP FORWARD AND STATE YOUR APPEARANCES FOR
10   THE RECORD, PLEASE.
11        MS. SUGNET:  GOOD AFTERNOON, YOUR HONOR.  NICOLE
12   SUGNET OF LIEFF CABRASER FOR THE PLAINTIFFS.
13        MR. SOBOL:  GOOD AFTERNOON, YOUR HONOR.  MICHAEL
14   SOBOL WITH THE PLAINTIFFS.
15        MR. BATES:  GOOD AFTERNOON.  HANK BATES WITH CARNEY,
16   BATES, AND PULLIAM FOR THE PLAINTIFFS.
17        THE COURT:  ALL RIGHT.  GOOD AFTERNOON, PLAINTIFFS
18   TEAM.
19        MS. SACKS:  GOOD AFTERNOON, YOUR HONOR.  LUANNE
20   SACKS, CYNTHIA RICKETTS, AND AMIT RANA OF SACKS, RICKETTS &
21   CASE, ON BEHALF OF DEFENDANT LIFELOCK.
22        THE COURT:  ALL RIGHT.  GOOD AFTERNOON, MS. RICKETTS.
23   I'M SORRY.  MS. SACKS OR MS. RICKETTS.
24        MS. SACKS:  MS. SACKS.
25        THE COURT:  ALL RIGHT.  GOOD AFTERNOON TO YOU BOTH.
```

1  ALL RIGHT.  SO WE'LL CONTINUE CLASS ACTION DAY.  WE'RE HERE FOR
2  A HEARING ON YOUR MOTION FOR PRELIMINARY APPROVAL AND
3  CONDITIONAL CERTIFICATION.  REALLY, I HAD TWO QUESTIONS FOR THE
4  PARTIES.
5         ONE IS THE PROPOSED TOTAL SETTLEMENT FUND IS
6  $68 MILLION, WHICH IN THE ABSTRACT SEEMS LIKE A LOT OF MONEY,
7  BUT IT WASN'T CLEAR TO ME LOOKING AT THE PAPERS WHAT THE
8  PARTIES BELIEVE THE MAXIMUM POTENTIAL RECOVERY AT TRIAL TO BE
9  TO GIVE ME THE ABILITY TO MAKE THE WEIGHING THAT I'M REQUIRED
10 TO MAKE, EITHER AT PRELIMINARY APPROVAL OR AT FINAL APPROVAL AT
11 A MINIMUM.  IS THERE ANY -- ANYTHING THAT YOU CAN OFFER ON THAT
12 FRONT TO ENLIGHTEN ME?
13         **MS. SUGNET:**  I CAN CERTAINLY TRY, YOUR HONOR.
14         THE AMOUNT THAT CLASS MEMBERS PAY TO BE A MEMBER OF
15 LIFELOCK INDEMNITY THEFT PLAN IS BETWEEN $10 AND $30 PER MONTH.
16 THE SETTLEMENT, NOW THAT WE HAVE A BETTER UNDERSTANDING OF HOW
17 MANY CLASS MEMBERS THERE ARE, WHICH IS 6.7 MILLION CLASS
18 MEMBERS -- I BELIEVE WE SAID 6.8 IN OUR PAPERS.  BUT NOW WE
19 KNOW THAT TO BE CLOSER TO 6.7.
20         WE KNOW -- WE CAN CALCULATE THAT IF THERE'S GOING TO
21 BE BETWEEN 3 PERCENT TO 10 CLAIMS RATE, THAT CLASS MEMBERS ARE
22 GOING TO GET $20 PER PERSON; SUBCLASS MEMBERS WHO DON'T MAKE
23 CLAIMS ARE GOING TO MAKE BETWEEN $16 AND $19 PER PERSON; AND
24 SUBCLASS MEMBERS WHO DO MAKE CLAIMS ARE GOING TO MAKE BETWEEN
25 $36 AND $39 PER PERSON.

1          SO WE KNOW THAT, AT A MINIMUM, PEOPLE ARE GOING TO
2  GET ON AVERAGE WHAT THEY PAID PER MONTH OF SERVICE.  AND
3  SUBCLASS MEMBERS WHO MAKE CLAIMS ARE GOING TO GET MAYBE A
4  LITTLE BIT MORE THAN THAT, ON AVERAGE, TWO MONTHS.
5          THESE ARE THE TYPES OF CLAIMS THAT REASONABLE MINDS
6  CAN DIFFER IN TERMS OF HOW YOU PROVE HARM OR WHAT THE -- HOW
7  THE HARM CAN BE CALCULATED.  PLAINTIFFS MIGHT ARGUE THAT CLASS
8  MEMBERS WERE NOT GETTING FULLY WHAT THEY PAID FOR, AND,
9  THEREFORE, THEY SHOULD HAVE A RETURN OF SOME VALUE OF WHAT THEY
10 WERE PAYING FOR THROUGHOUT THE CLASS.
11         HOW YOU DETERMINE WHAT THAT VALUE IS IN CONSIDERATION
12 OF WHAT THEY ACTUALLY RECEIVED PRESENTS A CHALLENGE, AS WELL AS
13 WHICH CLASS MEMBERS MIGHT HAVE ACTUALLY GOTTEN THE BENEFITS OF
14 THE SERVICE, MIGHT HAVE ACTUALLY GOTTEN TIMELY ALERTS, FOR
15 EXAMPLE, AS OPPOSED TO OTHER CLASS MEMBERS THAT MAYBE DIDN'T
16 GET A TIMELY ALERT; THEN ON TOP OF THAT.  WHICH CLASS MEMBERS
17 WHO MAYBE DIDN'T GET A GET A TIMELY ALERT ALSO SUFFERED SOME
18 OTHER KIND OF HARM AS A RESULT OF THAT, FOR EXAMPLE, SOME KIND
19 OF CREDIT FRAUD.
20         AND SO THERE'S A NUMBER OF CHALLENGES IN DETERMINING
21 WHAT THE MAXIMUM TOTAL RECOVERY IS, BECAUSE IT CERTAINLY ISN'T
22 EVERY MONTH THAT LIFELOCK MEMBERS PAY FOR SERVICE.  THEY DID
23 GET SOME VALUE, AND SOME CLASS MEMBERS MIGHT EVEN THINK THAT
24 THEY GOT THE FULL VALUE OF THEIR SERVICE.
25         WE THINK THAT BETWEEN A MONTH AND TWO MONTHS OF

1  SERVICE IS A REASONABLE RECOVERY FOR CLASS MEMBERS.

2      **THE COURT:** ALL RIGHT. ALTHOUGH, I'M NOT SURE YOU

3  HEARD THE DISCUSSION I HAD IN THE MATTER EARLIER, IS THERE A

4  PRO RATA REDUCTION SUCH THAT IF MORE CLASS MEMBERS RESPOND THAN

5  YOU THINK, THEY END UP WITH SOMETHING THAT CAN BE WELL LESS

6  THAN THE APPROXIMATELY MONTH'S SERVICE AMOUNT?

7      **MS. SUGNET:** WELL, THE DIFFERENCE HERE IS THAT

8  THERE'S A SETTLEMENT FUND OF 68 MILLION, THE TOTAL OF WHICH IS

9  GOING FOR CLASS MEMBER PAYMENTS. ATTORNEYS' FEES, EVERYTHING

10  ELSE IS GOING TO BE PAID ON TOP OF THAT. SO, ACTUALLY, THE

11  TOTAL PAYOUT THAT LIFELOCK IS DOING HERE IS GOING TO BE ABOVE

12  80 MILLION.

13      WE'VE DONE THE CALCULATIONS. WE HAVE THE CLASS

14  MEMBER DATA NOW. SO WE'VE DONE THE CALCULATIONS, AS I SAID, OF

15  BETWEEN 3 AND 10 PERCENT CLAIMS RATE, WHICH IS WHAT WE'VE SEEN

16  AS TYPICAL IN CONSUMER CLASS ACTIONS.

17      WE'VE ALSO DONE THE CALCULATION FOR WHAT HAPPENS IF A

18  HUNDRED PERCENT OF THE CLASS FOR SOME REASON DECIDES TO MAKE A

19  CLAIM. IN THAT INSTANCE, WHICH WE THINK IS VERY UNLIKELY, BUT

20  IN THAT INSTANCE, CLASS MEMBERS WILL GET $5. SUBCLASS MEMBERS

21  WHO DON'T MAKE CLAIMS WOULD GET $10. AND SUBCLASS MEMBERS THAT

22  MAKE CLAIMS WOULD GET $15.

23      SO WHILE LESS THAN WHAT WE EXPECT TO GET PAID, IT'S

24  NOT THAT THEY'RE GOING TO GET NOTHING.

25      **THE COURT:** YOU THINK THAT EVEN IF THERE'S A HUNDRED

1   PERCENT RESPONSE FROM ALL 6.7 MILLION CLASS MEMBERS, THE LOWEST
2   PAYMENT PER PERSON WOULD BE $5?
3           **MS. SUGNET:**  THAT'S CORRECT?
4           **THE COURT:**  AND TAKING YOUR POINT THAT THE VALUATION
5   OF THE CLAIM IS DIFFICULT AND THERE ARE LOTS OF VARIABLES AND
6   THOSE VARIABLES ARE THE KINDS OF THINGS THAT TEND TO LEAD
7   SETTLEMENT DISCUSSIONS AND SETTLEMENT AGREEMENTS LIKE THE ONE
8   HERE, BUT DO YOU HAVE ANY ABILITY TO APPROXIMATE WHAT YOU
9   THOUGHT YOUR BEST RESULT AT TRIAL WOULD BE?  ESSENTIALLY, THIS
10  PROCESS IS FIGURE OUT WHAT THE MAXIMUM RECOVERY IS, WE DISCOUNT
11  FOR LITIGATION RISK AND ALL SORTS OF OTHER THINGS, AND WE COME
12  TO SOMETHING THAT'S FAIR AND REASONABLE.
13          BUT DO YOU HAVE SENSE, IF ALL INFERENCES ENDED UP
14  ROLLING OUT IN YOUR FAVOR, WHAT THE MAXIMUM RECOVERY WOULD BE
15  IF YOU SUCCEEDED AT TRIAL?
16          **MS. SUGNET:**  I DO THINK THAT'S A DIFFICULT
17  CALCULATION TO MAKE WITH PRECISION.  I WILL SAY BASED ON OUR
18  EXPERIENCE IN SIMILAR TYPES OF CONSUMER PROTECTION CASES, WE
19  BELIEVE THIS IS A VERY GOOD RESULT.  WE EXPECTED WHEN WE WENT
20  INTO SETTLEMENT NEGOTIATIONS WE HOPED TO GET AT LEAST ABOUT A
21  MONTH BACK OF PAYMENT FOR CLASS MEMBERS AND I THINK WE GOT EVEN
22  SLIGHTLY MORE THAN THAT FOR SOME CLASS MEMBERS, THE SUBCLASS
23  WHO WE BELIEVE WERE MORE LIKELY TO HAVE BEEN HARMED BY
24  LIFELOCK'S PRACTICES.
25          I'LL ALSO NOTE THAT THE FTC, AS WE FILED TODAY, JUST

```
 1   ENTERED INTO A SETTLEMENT WITH LIFELOCK OF A HUNDRED MILLION
 2   DOLLARS, OF WHICH $68 MILLION IS DESIGNATED TO PAY CONSUMERS
 3   THROUGH THIS SETTLEMENT AND THROUGH OUR PROPOSED METHOD OF
 4   ALLOCATION.  AND SO I BELIEVE THE FTC ALSO BELIEVES THAT OUR
 5   SETTLEMENT ADDRESSES THEIR CONCERNS THAT THEY HAD WITH LIFELOCK
 6   IN PROVIDING REDRESS TO CONSUMERS.
 7         THE COURT:  THE 68 MILLION AND THE FTC SETTLEMENT, IS
 8   SOMEHOW PEGGED FORMALLY OR INFORMALLY TO YOUR 68 MILLION?
 9         MS. SUGNET:  IT IS, YOUR HONOR, AND WE DID FILE
10   SOMETHING TODAY THAT SHOWS THAT.  IT'S ALSO IN OUR PRELIMINARY
11   APPROVAL PAPERS AS WELL AS OUR SETTLEMENT.  BUT HOW IT WORKS IS
12   THE FTC IS SUPPOSED TO DEPOSIT -- OR, I'M SORRY, LIFELOCK IS
13   SUPPOSED TO DEPOSIT A HUNDRED MILLION DOLLARS INTO THE COURT'S
14   REGISTRY AS PART OF THE FTC SETTLEMENT, OUT OF WHICH LIFELOCK,
15   THROUGH THE SETTLEMENT PAPERS THEY SUBMITTED WITH THE FTC,
16   LIFELOCK IS ALLOWED TO USE 68 MILLION OF THAT TO FUND OUR
17   SETTLEMENT IF CERTAIN CONDITIONS ARE MET.
18         NOW IF CERTAIN CONDITIONS FOR SOME REASON AREN'T MET,
19   EVEN THROUGH OUR SETTLEMENT LIFELOCK IS REQUIRED TO FUND OUR
20   SETTLEMENT WITHIN THREE DAYS OF FINAL APPROVAL, EVEN IF THEY
21   SOMEHOW AREN'T ABLE TO GET $68 MILLION OUT OF THAT COURT
22   REGISTRY.
23         THE COURT:  ALL RIGHT.  AND THEN THE ONLY OTHER
24   QUESTION I HAD WAS WITH REGARD TO THE SECOND AMENDED COMPLAINT
25   THAT WILL BE FILED TO ADD MR. EBARLE AS A NAMED PLAINTIFF, WITH
```

1   THE PROVISO THAT IF THE SETTLEMENT FALLS THROUGH, THEN THE
2   COMPLAINT IS WITHDRAWN.  I WASN'T SURE WHAT THE MOTIVATION WAS
3   BEHIND THE TAKE BACK OF THE COMPLAINT.  I UNDERSTAND THAT
4   MR. EBARLE WOULD BE A CLASS REPRESENTATIVE OF A SUBCLASS, AND
5   THAT SEEMED LOGICAL TO ME.  BUT WHAT'S THE RATIONALE FOR
6   NEEDING TO RESCIND THE SECOND AMENDED COMPLAINT IF THE
7   SETTLEMENT DOESN'T GO THROUGH?
8           **MS. SUGNET:**  THAT WOULD BE SOMETHING LIFELOCK'S
9   COUNSEL COULD ADDRESS MORE FULLY, BUT I THINK THE IDEA WAS THAT
10  UNDER THE NORMAL RULES OF PROCEDURE, THEY ARE ABLE TO CONTEST
11  US, YOU KNOW -- WE'D HAVE TO GO THROUGH A MOTION WITH THE COURT
12  TO FILE A SECOND AMENDED COMPLAINT, AND THEY WOULD HAVE TO --
13  THEY WOULD HAVE THE OPPORTUNITY EITHER TO STIPULATE TO THAT AND
14  CONTEST THAT, AND I THINK THEY WANT TO RESERVE THAT RIGHT.
15          **THE COURT:**  IS THAT RIGHT?
16          **MS. SACKS:**  THAT IS CORRECT, YOUR HONOR.
17          **THE COURT:**  SO THE IDEA IS THAT YOU WOULD BE BACK IN
18  THE SAME PLACE YOU WOULD HAVE BEEN HAD THE SETTLEMENT NOT BEEN
19  DISCUSSED.  YOU JUST DON'T WANT TO WAIVE ANY ABILITY YOU MIGHT
20  HAVE TO OBJECT TO THE AMENDED COMPLAINT?
21          **MS. SACKS:**  THAT'S ABSOLUTELY CORRECT, YOUR HONOR.
22  AND, IN ADDITION, AT THE TIME THAT WE NEGOTIATED THE SETTLEMENT
23  AGREEMENT, THE OPPORTUNITY TO SETTLE WITH THE FTC WAS STILL
24  UNCERTAIN, AND SO WE WERE TRYING TO PRESERVE ALL OF OUR
25  OPPORTUNITIES THERE.  NOW THAT WE HAVE FINALLY AS OF THIS

1  MORNING HAD THAT UNCERTAINTY, THE LANDSCAPE IS MUCH CLEARER FOR
2  EVERYONE.
3         IF I MAY, I CAN ALSO ASSIST A BIT ON THE ISSUE OF
4  POSSIBLE TOTAL RECOVERY.
5         **THE COURT:** SURE.
6         **MS. SACKS:** IN CONNECTION WITH THE FTC INVESTIGATION
7  AN ANALYSIS WAS DONE OF THE TOTAL NUMBER OF ALERTS THAT WERE
8  DELIVERED AND/OR POTENTIALLY NOT DELIVERED.  SO IF WE LOOK AT
9  THAT TIME FRAME, WHICH IS THE SUBCLASS TIME FRAME, THERE WAS
10 APPROXIMATELY $504,000,000 OF REVENUE COLLECTED BY LIFELOCK.
11        DURING THAT SAME TIME PERIOD, 99.98 PERCENT OF ALL
12 ALERTS WERE DELIVERED.  SO IF WE USE THAT AND WE EXTRAPOLATE,
13 THE MOST LIKELY RECOVERY THAT PLAINTIFFS COULD GET HERE WOULD
14 BE $10 MILLION.
15        NOW, OBVIOUSLY, PLAINTIFFS WOULD DISPUTE THAT ISSUE.
16 WE TAKE THAT POSITION BECAUSE, IN ADDITION TO POSSIBLY HAVING
17 ISSUES, THE CONTEXT AND CONTENT OF OUR ADVERTISING, THEY STILL
18 HAVE TO SHOW AN ACTUAL INJURY AS A CONSEQUENCE OF SOME
19 NON-DELIVERY OF SERVICES.
20        I THINK IT'S FAIR TO SAY, YOUR HONOR, THAT FROM THE
21 TIME THE LAWSUIT WAS FIRST FILED AND AS WE PROCEEDED THROUGH
22 DISCOVERY, THE PLAINTIFFS GOT A MUCH DIFFERENT IMPRESSION OF
23 HOW LIFELOCK PERFORMED ITS SERVICES AND HOW CLOSE TO ITS
24 ADVERTISING ITS ACTUAL DELIVERY OF SERVICES WAS.  I THINK THE
25 FTC ALSO GOT THAT SAME PERCEPTION.

1   THERE WERE SOME VERY ISOLATED INSTANCES IN WHICH
2   ALERTS WERE DELAYED.  WE ACKNOWLEDGED THAT FOR THE SUBSTANTIAL
3   DISCOVERY CONDUCTED OF THAT.  BUT THE BASIC INTENTIONS AND
4   BASIC IMPRESSIONS THAT CONSUMERS HAD WITH REGARD TO THE
5   ADVERTISING WAS EXACTLY THE DELIVERY OF SERVICES THEY RECEIVED.
6           SO UNDER *COMCAST VERSUS BEHREND*, THERE WOULD HAVE TO
7   BE A VERY LARGE CREDIT, SO TO SPEAK, GIVEN TO LIFELOCK AS
8   AGAINST THE TOTAL AMOUNT OF REVENUE IT COLLECTED.
9           SO IN TERMS OF THE $68 MILLION SETTLEMENT AMOUNT,
10  THAT WAS NEGOTIATED, AS COUNSEL SAID, THE ATTORNEYS' FEES ARE
11  ON TOP IT; PAYMENTS TO THE CLASS REPRESENTATIVES ARE ON TOP OF
12  IT.
13          JUST SO IT'S CLEAR, WITH REGARD TO THAT HUNDRED
14  MILLION DOLLARS THAT'S BEING DEPOSITED AS PART OF THE FTC
15  SETTLEMENT, NONE OF THAT CAN BE USED FOR PAYING ATTORNEYS'
16  FEES.  NONE OF THAT CAN BE USED FOR THE COST OF ADMINISTRATION
17  OR NOTICE.  IT SOLELY CAN BE USED FOR DIRECT PAYMENTS TO THE
18  CLASS MEMBERS IF, IN FACT, THE SETTLEMENT IS APPROVED.
19          **THE COURT:**  ALL RIGHT.  THOSE WERE MY QUESTIONS.
20  ANYTHING ELSE NOT IN THE PAPERS THAT YOU-ALL WANTED TO BRING TO
21  MY ATTENTION?
22          **MS. SUGNET:**  YES, YOUR HONOR.  AT THE TIME WE WROTE
23  OUR PRELIMINARY APPROVAL PAPERS, WE HAD A GOOD ESTIMATE OF HOW
24  MANY CLASS MEMBERS THERE WERE.  AND NOW THAT WE'VE GOTTEN THE
25  DATA TOGETHER, WE KNOW THAT WITH PRECISION.

1 AND SO, AS YOU'VE SEEN TODAY, I WAS ABLE TO GIVE YOU
2 ESTIMATES OF WHAT THE CLASS MEMBERS WILL GET.  WE WOULD LIKE TO
3 DO THE SAME FOR CLASS MEMBERS, AND WE WOULD LIKE TO, THEREFORE,
4 SUBMIT TO YOUR HONOR PROPOSED REVISED NOTICES THAT TELL THE
5 CLASS MEMBERS A LITTLE BIT MORE ABOUT WHAT THEY'RE EXPECTED TO
6 GET PAID.
7     WE WOULD ALSO SAY IN THOSE REVISED NOTICES -- I THINK
8 IT SAYS IN THERE THAT FTC SETTLEMENT IS PENDING.  WE WOULD LIKE
9 TO CLARIFY THAT IT'S ACTUALLY GONE THROUGH.
10     **THE COURT:**  THAT MAKES SENSE TO ME.
11     ANY OBJECTION TO THAT?
12     **MS. SACKS:**  NO, YOUR HONOR.
13     **THE COURT:**  ALL RIGHT.  SO YOU'LL MEET AND CONFER AND
14 SUBMIT REVISED NOTICE PAPERS?
15     **MS. SUGNET:**  THAT'S CORRECT.
16     (SIMULTANEOUS SPEAKING.)
17     **MS. SACKS:**  I BELIEVE WE ANTICIPATE BEING ABLE TO DO
18 IT TOMORROW.
19     **MS. SUGNET:**  YES.  MONDAY AT THE LATEST.
20     YOUR HONOR, BECAUSE OF THE REQUIREMENTS IN THE FTC
21 SETTLEMENT FOR THE RELEASE OF THAT FUNDS, THERE IS SOME TIME
22 URGENCY TO THIS.  I HAVE NO IDEA.  YOUR DOCKET IS OBVIOUSLY
23 VERY HEAVY, JUST AS WE WITNESSED THIS AFTERNOON, BUT TO THE
24 EXTENT THAT WE -- EXCUSE ME, SORRY, KERMIT THE FROG -- TO THE
25 EXTENT WE COULD GET AN ORDER WITHIN 15 TO 30 DAYS, THAT WOULD

```
1   HELP EXPEDITE ISSUES WITH THE FTC.  WE UNDERSTAND THAT MAY NOT
2   BE POSSIBLE WITH THE HOLIDAYS.
3           THE COURT:  WELL, I'LL CERTAINLY TAKE THAT INTO
4   ACCOUNT, THOUGH.
5           MS. SUGNET:  THANK YOU, YOUR HONOR.
6           THE COURT:  FIFTEEN PROBABLY IS NOT GOING TO HAPPEN.
7   THIRTY COULD HAPPEN.
8           MS. SUGNET:  WE APPRECIATE IT.  THANK YOU VERY MUCH.
9           THE COURT:  ALL RIGHT.  SUBMITTED?
10          MS. SACKS:  YES.
11          THE COURT:  ALL RIGHT.  THANK YOU.
12          MS. SUGNET:  THANK YOU, YOUR HONOR.
13          (PROCEEDINGS ADJOURNED AT 4:17 P.M.)
```

## CERTIFICATE OF TRANSCRIBER

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE ABOVE MATTER.

I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

*/s/ jncolumbini*

JOAN MARIE COLUMBINI

JUNE 17, 2016