UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE HAYWOOD S. GILLIAM

|  |  |
|---|---|
| NAPOLEON EBARLE AND JEANNE STAMM, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>        PLAINTIFFS<br><br> VS.<br><br>LIFELOCK, INC., A DELAWARE CORPORATION,<br><br>        DEFENDANT. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) NO. C 15-CV-00258 HSG<br>)<br>)<br>)<br>) SAN FRANCISCO, CALIFORNIA<br>) THURSDAY<br>) JUNE 23, 2016<br>) |

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING 2:06 P.M. - 2:35 P.M.**

**APPEARANCES:**

**FOR PLAINTIFFS**          LIEFF, CABRASER, HEIMANN & BERNSTEIN
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111
      BY: **MICHAEL W. SOBOL, ESQUIRE**
          **NICOLE DIANE SUGNET, ESQUIRE**

          CARNEY, BATES & PULLIAM
2800 CANTRELL ROAD, SUITE 510
LITTLE ROCK, ARKANSAS 72202
      BY: **JOSEPH HENRY BATES, III, ESQUIRE**

(FURTHER APPEARANCES ON FOLLOWING PAGE)

*REPORTED BY: JOAN MARIE COLUMBINI, CSR #5435, RPR*
*RETIRED OFFICIAL COURT REPORTER, USDC*

**APPEARANCES (CONTINUED):**

FOR DEFENDANTS
                     SACKS, RICKETTS & CASE
                     177 POST STREET, SUITE 650
                     SAN FRANCISCO, CALIFORNIA  94108
            BY:  **LUANNE SACKS, ESQUIRE**
               **AMIT RANA, ESQUIRE**

                     SACKS, RICKETTS, & CASE
                     2800 NORTH CENTRAL AVENUE, SUITE 1230
                     PHOENIX, ARIZONA  85004
            BY:  **CYNTHIA A. RICKETTS, ESQUIRE**

FOR OBJECTORS
                     **ALAN SHERWOOD, ESQUIRE**
**PIAZZA AND HINOJOSA**

(TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSEL'S FAILURE TO
IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER
ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)


PROCEEDINGS

---OOO---

**THE CLERK:**  AND WE'RE CALLING 3:15-258, EBARLE, ET
AL. VERSUS LIFELOCK, INC.

PLEASE STEP FORWARD AND STATE YOUR APPEARANCES FOR
THE RECORD, PLEASE.

**MR. SOBOL:**  GOOD AFTERNOON, YOUR HONOR.  MICHAEL
SOBOL FROM LIEFF, CABRASER, HEIMANN & BERNSTEIN FOR PLAINTIFFS
IN THE PROVISIONALLY CERTIFIED CLASS.

**THE COURT:**  GOOD AFTERNOON, MR. SOBOL.

**MR. BATES:**  HANK BATES, YOUR HONOR, ALSO FOR
PLAINTIFFS.

**THE CLERK:**  AS I ADVISED, YOU NEED TO COME TO THE
PODIUM AND STATE YOUR APPEARANCE.

**MR. BATES:**  HANK BATES WITH CARNEY, BATES & PULLIAM,
ON BEHALF OF THE PLAINTIFFS IN THE CLASS.

**THE COURT:**  GOOD AFTERNOON.

**MS. SUGNET:**  AND NICOLE SUGNET ON BEHALF OF LIEFF,
CABRASER, HEIMANN & BERNSTEIN FOR THE PLAINTIFFS.

**THE COURT:** GOOD AFTERNOON.

**MS. SACKS:** GOOD AFTERNOON, YOUR HONOR. LUANNE SACKS, CYNTHIA RICKETTS, AND AMIT RANA OF SACKS, RICKETTS & CASE ON BEHALF OF DEFENDANT LIFELOCK, INC.

**THE COURT:** GOOD AFTERNOON, MS. SACKS.

**MR. SHERWOOD:** GOOD AFTERNOON, YOUR HONOR. MY NAME IS ALAN SHERWOOD. I REPRESENT THREE OBJECTORS. THE FIRST TWO ARE STEPHEN AND JILL PIAZZA, AND I AM ASSOCIATED WITH COUNSEL STUART YOES, Y-O-E-S, ON THAT MATTER. I ALSO REPRESENT OBJECTOR JENNIFER HINOJOSA, H-I-N-O-J-O-S-A, AND MY CO-COUNSEL ON THAT MATTER IS ALBERT BACHARACH, B-A-C-H-A-R-A-C-H.

THANK YOU, YOUR HONOR.

**THE COURT:** ALL RIGHT. GOOD AFTERNOON.

ARE THERE ANY OTHER OBJECTORS THAT ARE PRESENT, TO THE PARTIES' KNOWLEDGE?

**UNIDENTIFIED SPEAKER:** I'M NOT AWARE OF ANY OTHERS.

**THE COURT:** ALL RIGHT. SO WE'RE HERE FOR A HEARING, FAIRNESS HEARING, FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT. I PRELIMINARILY APPROVED THE SETTLEMENT ON JANUARY 20TH OF THIS YEAR, AND WE'VE ALSO THEN GOT ON CALENDAR THE MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AS WELL AS THE SERVICE AWARDS.

FOR THE RECORD, I'VE READ AND CONSIDERED THE FILINGS SUBMITTED IN CONNECTION THE HEARING, INCLUDING THE MOTION WHICH WAS FILED ON MAY 13TH, THE AWARD -- MOTION FOR AWARD OF FEES

AND COSTS, AS WELL AS INCENTIVE AWARDS FILED ON MARCH 18TH OF
THIS YEAR; THE DECLARATION OF MS. CASTENADA AND THE ATTACHED
EXHIBITS.  THAT'S DOCKET 74.  AS WELL AS ALL OF THE OBJECTIONS
BOTH DIRECTLY FILED ON THE DOCKET AND THOSE THAT WERE ATTACHED
TO THE DECLARATION SUBMITTED BY THE SETTLEMENT ADMINISTRATOR.
IT WAS DOCKET 74, EXHIBITS G AND H.

       LIFELOCK ALSO SUBMITTED A RESPONSE TO THE OBJECTIONS,
DOCKET 77, AND MS. SACKS'S DECLARATION IN SUPPORT, WHICH IS
DOCKET 78.  OBJECTOR CARRASCO FILED A RESPONSE ON MAY 20TH,
DOCKET 79.

       ARE THERE ANY OTHER DOCUMENTS THAT THE PARTIES
BELIEVE ARE RELEVANT TO TODAY'S PROCEEDING, OTHER THAN THOSE I
JUST LISTED?

       **MR. SOBOL:**  YOUR HONOR, YOU MAY HAVE LISTED IT, BUT
CLASS COUNSEL ALSO SUBMITTED DECLARATIONS IN SUPPORT OF THE
SETTLEMENT AND THE MOTION FOR ATTORNEYS' FEES.  AND, ALSO, THE
CLASS REPRESENTATIVES, THE FOUR NAMED CLASS REPRESENTATIVES,
ALSO FILED DECLARATIONS IN SUPPORT OF THE SETTLEMENT.

       (SIMULTANEOUS SPEAKING.)

       **THE COURT:**  THAT'S A FAIR POINT.  I SHOULD NOTE IT
THAT I REVIEWED THE DOCUMENTS ATTACHED TO THE MOTION AS WELL IN
SUPPORT OF THE MOTION.

       **MR. SHERWOOD:**  AND, YOUR HONOR, I BELIEVE YOUR
RECITATION INCLUDED THE OBJECTIONS OF THE OBJECTORS I REPRESENT
THIS MORNING -- THIS AFTERNOON.  I JUST WANTED TO CONFIRM THAT.

**THE COURT:** IT DID.

**MR. SHERWOOD:** VERY GOOD.  THANK YOU.

**THE COURT:** ALL RIGHT.  SO WHY DON'T --

**MS. SACKS:** YOUR HONOR, THERE WAS ONE ADDITIONAL DOCUMENT THAT WAS FILED THIS MORNING.  IT WAS A JOINT UPDATE WITH REGARD TO THE ACTUAL INFORMATION FROM THE CLAIMS ADMINISTRATOR.

**THE COURT:** ALL RIGHT.  THAT I HAD NOT SEEN.  I WILL REVIEW IT.  WHAT WAS THE GIST OF IT?

**MR. SOBOL:** YOUR HONOR, IT WAS AN UPDATE OF THE STATISTICS OF THE CLAIMS PROCESS, WHICH IS SOMEWHAT DYNAMIC, AND I THINK WE HAVE, AS OF TODAY, UPDATED THE NUMBER OF CLASS MEMBERS, THE NUMBER OF CLAIMANTS IN EACH OF THE VARIOUS CLASS AND SUBCLASS GROUPS, AND WHAT THEIR EXPECTED PAYMENTS WOULD BE UNDER THE DISTRIBUTION, THE INITIAL DISTRIBUTION AND THE SETTLEMENT.

**THE COURT:** ALL RIGHT.  AND JUST FOR TODAY'S PURPOSES, HOW HAS THAT CHANGED, IF AT ALL?

**MR. SOBOL:** NOT MATERIALLY, YOUR HONOR.  SO, WHAT WE HAVE IS, OF COURSE, A LARGE CLASS AND THEN A SUBCLASS OF THE LARGE CLASS DEFINED BY A START AND END DATE.

AND SO THE SUBCLASS WAS TO RECEIVE AN AUTOMATIC PAYMENT WHETHER THEY MADE A CLAIM OR NOT AND COULD ALSO MAKE A CLAIM.  AND THEN PEOPLE ON THE OTHER SIDES OF THE SUBCLASS DATEWISE COULD SUBMIT A CLAIM.  AND SO THE NUMBERS DON'T

CHANGE.

THE MEMBERS OF THE CLASS WHO ARE NOT A SUBCLASS STILL RECEIVE $20 FOR THEIR CLAIM.  THE SUBCLASS MEMBERS GET AN AUTOMATIC PAYMENT OF $19.48.  AND HAD THEY MADE CLAIM, THEY ALSO GET $20.  SO THEIR NET TAKE IN ONE CHECK WILL BE $39.48. AND THE NUMBERS ARE SET FORTH IN THERE.  THEY'RE VERY -- WE SUBMITTED SOME NUMBERS EARLIER, AND THEY NEEDED UPDATING.

I THINK ALSO IN OUR FINAL APPROVAL PAPER WE HAVE TO -- WE, PLAINTIFFS, HAVE TO ACKNOWLEDGE THERE WAS A BIT OF A TYPO, AND THAT IS THAT WE MENTIONED THAT -- WITH REGARD TO THE INITIAL DISTRIBUTION, WHAT'S IMPORTANT TO RECOGNIZE IS THAT THE SETTLEMENT IS STRUCTURED TO PAY OUT ALL OF THE MONEY AVAILABLE TO THE CLASS.  IT'S A LARGE BENEFIT AND REALLY POSITIVE ASPECT OF WHAT IS A TERRIFIC SETTLEMENT.

DUE TO FRACTIONAL PENNIES AND ROUNDING, IT CAN'T QUITE BE 68 MILLION.  IT ENDS UP BEING 67,999-SOMETHING.  I THINK WE'RE ABOUT $8,000 SHORT OF THE $68 MILLION NUMBER.  WE MISREPORTED THAT NUMBER IN OUR -- INADVERTENTLY IN OUR MOTION PAPERS, BUT WE'VE CORRECTED IT THIS MORNING.

**THE COURT:**  ALL RIGHT.  AND WHAT HAPPENS TO THE ROUNDING -- THE ROUNDING AMOUNT THAT CAN'T BE --

**MR. SOBOL:**  THE $8,000?  INITIALLY, YOUR HONOR, IT GETS -- IT WILL BE -- AS I'M SURE YOU'RE AWARE, THE SETTLEMENT HAS A SECOND ROUND DISTRIBUTION, WHICH WILL INCLUDE FUNDS COMPRISING OF THAT $8,000-SOMETHING NUMBER, BUT PROBABLY MORE

SIGNIFICANTLY WILL ALSO INCLUDE THE VALUE OF THE FUNDS OF
CHECKS WHICH WERE DELIVERED TO THE CLASS BUT NOT CASHED.

AS THAT MONEY POURS INTO THAT, THAT GETS DISTRIBUTED
OUT TO THE CLASS, THE VALID CLAIMANTS, WHO CASHED THEIR CHECK
AND ARE SHOWING INTEREST, CONTINUED INTEREST IN THE LITIGATION
AND THE RESULT OF THE SETTLEMENT.  AND AT THAT POINT IF THERE'S
ANY -- AND WE REALLY THINK AT THAT POINT IT WOULD BE VERY
MINIMAL -- IT KICKS BACK TO THE FTC.

**THE COURT:**  ALL RIGHT.

**MR. SOBOL:**  YEAH.

**THE COURT:**  SO IT SOUNDS AS THOUGH THE VAST BULK OF
THAT $8,000 WILL BE PAID OUT IN THE SECOND ROUND DISTRIBUTION,
YOU WOULD EXPECT.

**MR. SOBOL:**  WE WOULD EXPECT THAT BASED ON HISTORY
AND, YOU KNOW, EXPERIENCE, ABSOLUTELY.

**THE COURT:**  ALL RIGHT.  WELL, ANY -- I'VE REVIEWED
THE PAPERS CAREFULLY.  I DON'T HAVE --

**MS. SACKS:**  EXCUSE ME, YOUR HONOR.  I APOLOGIZE FOR
INTERRUPTING.

THERE WAS ONE ADDITIONAL ASPECT OF THE UPDATE TODAY.
THERE ARE FOUR MORE OPT-OUTS WHO HAD NOT BEEN PROPERLY RECORDED
PREVIOUSLY.

**MR. SOBOL:**  THAT IS CORRECT.  THAT'S NOT IN A
SUBMISSION THAT WAS FILED EARLIER TODAY.

**MS. SACKS:**  THANK YOU.

**MR. SOBOL:** HOWEVER, WE WERE GOING TO GET TO THAT BECAUSE WE HAVE, OF COURSE, SUBMITTED A FINAL APPROVAL ORDER FOR YOUR HONOR'S CONSIDERATION.

AND WHAT THESE FINAL APPROVAL ORDERS DO IS THEY HAVE A LONG LIST ATTACHED TO THEM OF THE OPT-OUTS, SO IT CAN BE RECOGNIZED THAT THEIR CLAIMS WERE NOT ADJUDICATED IN THEIR ABSENCE BECAUSE THEY OPTED OUT OF THE CASE.

THE LIST THAT WE SUBMITTED WITH OUR PROPOSED ORDER ALSO NEEDED UPDATING. WE HAVEN'T SUBMITTED ANYTHING TO THE COURT YET ON THAT. THERE'S FOUR MORE OPT-OUTS, AND WE WOULD JUST REQUEST LEAVE TO FILE THE UPDATED LIST AFTER THE HEARING, YOU KNOW, AFTER WE GET SOME FEEDBACK, ANY OTHER FEEDBACK THAT WE MIGHT --

**THE COURT:** THAT'S FINE. THESE ARE INDIVIDUALS WHO TIMELY OPTED OUT BUT JUST WERE INADVERTENTLY LEFT OFF THE PRIOR LIST?

**MR. SOBOL:** I BELIEVE SO. THERE ARE SOME OPT-OUTS -- THERE ARE SOME OPT-OUTS ON THE LIST, YOUR HONOR, THAT DID NOT TIMELY MAKE IT. AND WE HAVE AGREED, THE PARTIES HAVE AGREED, THAT THEY CAN OPT OUT, PENDING THE COURT'S DECISION ON THAT.

BUT THESE FOUR, I BELIEVE, WERE MISTAKENLY LET OFF. THAT'S MY UNDERSTANDING FROM THE CLAIMS ADMINISTRATOR. IT HAD TO DO WITH HOW THEY CODED AND PUT THINGS INTO BASKETS AND WHATNOT.

**THE COURT:** ALL RIGHT. WELL, SUBMITTING A REVISED

LIST TO INCORPORATE THAT MAKES SENSE, AND YOU SHOULD GO AHEAD
AND DO THAT.

   **MS. SACKS:** THANK YOU, YOUR HONOR.

   **THE COURT:** ALL RIGHT. THE ONLY QUESTIONS I HAD FOR
MR. SOBOL ARE CONCERNING THE FEES CALCULATION. I UNDERSTAND
THAT HERE IT'S SOMEWHAT OF A UNIQUE CIRCUMSTANCE AND THAT
YOU'RE ASKING FOR WELL BELOW THE BENCHMARK PERCENTAGE OF
25 PERCENT.

   HERE, THOUGH, THE LODESTAR CROSSCHECK, FOR WHAT IT'S
WORTH, DOES RESULT IN A RELATIVELY HIGH MULTIPLIER. IT SEEMED
TO ME TO BE SOMEWHERE ON THE ORDER OF ABOUT 8, WHEREAS *VIZCAINO*
INVOLVED A MULTIPLIER OF 3.6. SO IT'S A HIGH MULTIPLIER, WHICH
DOES NOT IN ITSELF MEAN THAT THE FEES ARE UNREASONABLE GIVEN
THE MEASUREMENT BY THE PERCENTAGE OF RECOVERY METHOD. BUT I
DID WONDER IF YOU HAVE ANY CASES FROM THE CIRCUIT THAT INVOLVE
LODESTAR MULTIPLIERS IN THE EIGHT RANGE SINCE UNDER *VIZCAINO*
THAT'S ONE OF THE QUESTIONS I'M ASKED TO LOOK AT.

   **MR. SOBOL:** YES, YOUR HONOR. IT'S -- IT IS A
SOMEWHAT HIGH MULTIPLIER, AS YOU POINT OUT. I CAN'T RUN AWAY
FROM THAT FACT. BUT IT'S ALSO A VERY LOW PERCENTAGE.

   AND SO *VIZCAINO* -- WHICH ALSO INVOLVED, BY THE WAY,
LITIGATION WHERE THERE WAS AN EARLY SETTLEMENT. AND WHAT THE
NINTH CIRCUIT CAUTIONED THERE WAS IN LOOKING AS YOU DO TO
LODESTAR CROSSCHECK, IT MAY BE LESS IMPORTANT IN A SITUATION
WHERE YOU HAVE AN EARLY SETTLEMENT, AND THE REASON IS BECAUSE

OF KEEPING THE INTEREST OF THE CLASS MEMBERS ALIGNED WITH CLASS
COUNSEL, SUCH THAT CLASS COUNSEL CONTINUES TO BE MOTIVATED TO
DO THE VERY BEST FOR THE CLASS.

YOU DON'T WANT TO -- YOU WANT TO DISCOURAGE
INEFFICIENCY.  YOU WANT TO PROMOTE INEFFICIENCY BY NOT
INCENTIVIZING LAWYERS TO ENGAGE IN PROTRACTED LITIGATION
TACTICS IN ORDER TO RAMP UP UNNECESSARILY LODESTAR TO JUSTIFY A
FEE WHICH THEREBY DELAYS THE CASE.

IN TERMS OF MULTIPLIERS, I'M PRETTY SURE WE HAVE IN
OUR BRIEF A COUPLE OF CASES THAT WERE CITED THERE.  *VIZCAINO* IS
VERY INSTRUCTIVE THAT WAY.  THERE'S A CASE FROM JUDGE CHESNEY
NOT THAT LONG AGO, I BELIEVE IN '07 THAT WE CITE, THE *GLASS*
CASE.  THERE'S A CASE, *CRAFT*, FROM DOWN SOUTH FROM RETIRED
JUDGE LARSON.

SO THERE ARE -- THERE IS A HISTORY OF -- AND *VIZCAINO*
ITSELF, I BELIEVE, NOTES THAT SOMETIMES UNDER THE APPROPRIATE
CIRCUMSTANCES, EVEN A MULTIPLIER OF 19, AS OPPOSED TO 8.17,
WHICH IS I THINK WHAT WE HAVE IN OUR BRIEF HERE, CAN BE
APPROPRIATE.

I SHOULD -- A COUPLE OF THINGS.  FIRST, I SHOULD NOTE
THAT, YOU KNOW, THE LODESTAR WE SUBMITTED, WHICH WAS AROUND
1.2 MILLION AT THE TIME THAT WE FILED OUR PAPERS, AND CERTAINLY
THE LODESTAR THAT WE'RE RELYING ON TO BASE OUR FEE, BUT, YOU
KNOW, THE INEVITABILITY IN THE CONTINUED LITIGATION AND
ADMINISTRATION OF THIS CASE, WE'RE GOING TO INCUR SIGNIFICANTLY

MORE TIME, MORE ATTENTION TO THIS CASE.

THE EFFECTIVE LODESTAR, JUST BY CONSIDERING OUR --
I'M SORRY -- THE RESPECTIVE MULTIPLIER BY JUST CONSIDERING OUR
LODESTAR AT, SAY, 1.5 MILLION, WHICH IS A VERY REALISTIC
NUMBER, GOES DOWN TO 6.8.  SO WE THINK WE'RE GIVEN -- THE
TOUCHSTONE HERE, OF COURSE, IS WHAT IS THE BENEFIT TO THE
CLASS.

AND SO IF YOU WERE TO DO A REVERSE SORT OF ANALYSIS
OF A LODESTAR-BASED APPROACH, YOU WOULD CROSSCHECK IT WITH A
PERCENTAGE OF THE RECOVERY, AND THE BENCHMARK YOU WOULD USE IS
NOT 12.6 PERCENT, WHICH WE HAVE HERE, BUT THE BENCHMARK YOU
WOULD USE IS:  DOES IT EXCEED 25 PERCENT?  AND THE REASON FOR
THAT, AGAIN, IS TO -- IS TO MOTIVATE CLASS COUNSEL TO OBTAIN
QUICK AND THOROUGH SETTLEMENTS OF AN AMOUNT TO MAXIMIZE THE
AMOUNT OF RECOVERY TO THE CLASS.

IF WE -- IF WE WERE HERE FOUR YEARS LATER AND WE
INCURRED FOUR TIMES THE LODESTAR THAT WE HAD RIGHT NOW, CALL IT
5 MILLION, AND WE CAME TO THE COURT WITH A $40 MILLION
SETTLEMENT AND WE ASKED FOR A 25 PERCENT FEE, THAT WOULD BE THE
SAME FEE ON A 2 MULTIPLIER FOR A RESULT THAT TOOK FOUR MORE
YEARS OR THREE MORE YEARS TO OBTAIN AND WAS HALF AS MUCH, AND
YET PEOPLE WOULD NOT BE SAYING, WELL, IS THE FEE REASONABLE
UNDER THAT CIRCUMSTANCE.  YOU'RE STILL WELL WITHIN THE
BENCHMARK.

SO I -- THERE IS PRECEDENT FOR THIS KIND OF

MULTIPLIER.  I THINK THAT IT KEEPS IN LINE THE INCENTIVES IN
THE RIGHT PLACE.

AND, AS I MENTIONED, YOU KNOW, THIS IS -- WHAT WAS
MOTIVATING US HERE WAS IN SETTLEMENT -- THIS IS SORT OF IN PART
THE MEDIATOR'S PROPOSAL.  THE MEDIATOR SUGGESTED -- WE WERE
DRIVING TOWARDS OBTAINING A SPECIFIC RESULT FOR THE CLASS, AND
I THINK THIS WAS MENTIONED AT THE PRELIMINARY APPROVAL.  WE
WANTED TO MAKE SURE THAT WE GOT BACK ABOUT A MONTH'S WORTH OF
FEES TO THE LIFELOCK COMPANY, AND THAT WAS THE GOAL.

AND IN ORDER TO MAKE THE NUMBERS WORK, THE MEDIATOR
COMES BACK WITH A PROPOSAL NOT ONLY FOR THE LUMP SUM, BUT A
PERCENTAGE OF WHAT COUNSEL WOULD TAKE, IN ORDER THAT WHAT WAS
LEFT OVER FOR THE CLASS WOULD GO THERE.

NOW, THAT PERCENTAGE WAS NOT 25 PERCENT.  WE COULD
LEGITIMATELY, I THINK, ON THE BASIS OF A REALLY TERRIFIC
SETTLEMENT HERE WHERE YOU HAVE NOT OBTAINED THE GOAL OF THE
CASE BY GETTING CLASS MEMBERS IN EXCESS OF A MONTHLY PAYMENT,
BUT YOU'RE PAYING ALL THAT MONEY OUT.  YOU KNOW, EXCEPT FOR
THESE FRACTIONAL PENNIES THAT WE'VE BEEN TALKING ABOUT, IT'S
ALL GOING OUT TO THE CLASS MEMBERS.

AND, ON TOP OF IT, WE'RE GETTING IT TO OVER
50 PERCENT OF THE CLASS.  SO, THERE'S A TREMENDOUS AMOUNT OF --
I MEAN, THESE ARE THE GOALS OF A CLASS ACTION SUIT, AND
PARTICULARLY A CONSUMER-BASED SUIT, IS TO TRY TO GET
RESTITUTION BACK OUT TO AS MANY CONSUMERS AS POSSIBLE, AND THAT

GOAL HAS BEEN REACHED HERE.

IT'S ALSO WORTH NOTING, I THINK, THAT THE FEES ARE COMING -- THE FEES ARE NOT COMING OUT OF THE CLASS RECOVERY IN THIS CIRCUMSTANCE.

**THE COURT:** I NOTICED THAT. AND I ASSUME THAT HERE THE REASON FOR THAT IS THAT THE FTC'S PRACTICE REQUIRES THE FEES TO BE SEPARATED FROM THE CLASS RECOVERY POOL?

**MR. SOBOL:** THAT WAS ONE OF THE -- YOUR HONOR CORRECTLY NOTES THAT THAT WAS A REASON WHY THAT CAME ABOUT, BUT THE QUESTION IS WHAT DO YOU DO WITH THAT REALITY, AND WHAT WOULD THAT -- THAT FACT -- WHAT DID NOT HAPPEN, YOUR HONOR?

WHAT DID NOT HAPPEN WAS THAT WE RAMPED DOWN THE AMOUNT OF MONEY FOR THIS SETTLEMENT AND THEN HAVE LIFELOCK PAY OUR FEES ON TOP.

AND WHAT WE DID WITH THAT OPPORTUNITY, WHAT WE DID AT THAT JUNCTURE, WAS VERY CAREFULLY MAKE SURE THAT WHAT THE CLASS WAS GOING TO RECEIVE WAS NOT GOING TO BE PREJUDICED BY A COORDINATED SETTLEMENT.

**THE COURT:** SO WHEN YOU REACHED THE INITIAL $68 MILLION SETTLEMENT, AT LEAST UNDER THE MOU, WHICH I UNDERSTAND WAS BEFORE THE FTC'S FILING OF THEIR CASE EVEN; IS THAT RIGHT?

**MR. SOBOL:** NO. THE MOU -- WE HAD AN INITIAL MEDIATION SESSION, THEN THE FTC FILED A CONTEMPT ACTION. THEN WE HAD ANOTHER MEDIATION SESSION WHERE THE MOU WAS SIGNED.

THEN WE HAD A SIGNED SET- -- THEN IT FLOWED FROM THERE.

        **THE COURT:**  ALL RIGHT.  BUT YOUR MOU WAS BEFORE THE
FTC'S SETTLEMENT OF ITS ACTION?

        **MR. SOBOL:**  YES.

        **THE COURT:**  ALL RIGHT.  AND AT THE TIME YOU ENTERED
THE MOU, IT WAS YOUR EXPECTATION THAT FEES WOULD SIMPLY BE
CALCULATED AS A PERCENTAGE OF THE SETTLEMENT POOL; THERE WAS NO
AGREEMENT TO THE CONTRARY AT THAT TIME?

        **MR. SOBOL:**  THAT'S CORRECT, YOUR HONOR.  ABSOLUTELY
RIGHT.  ORIGINALLY, UNDER THE MOU -- AND AT THAT STAGE OF THE
NEGOTIATIONS IT WAS GOING TO BE A $68 MILLION SETTLEMENT
AGAINST WHICH WE COULD APPLY FOR UP TO 15 PERCENT OF THAT FUND
FOR OUR FEE, SUBJECT TO THE COURT'S APPROVAL.

        AND THEN, THEREAFTER, ONE OF THE THINGS THAT WE DID
WAS MAKE SURE THAT ALTHOUGH, YOU KNOW, WHAT'S -- IT'S A SETOFF.
IN OTHER WORDS, WHAT LIFELOCK IS -- THEY'RE ALLOWED TO SET OFF
THE 68 MILLION FROM THEIR OBLIGATION TO THE FTC.  WHAT WE
WANTED TO MAKE SURE IS EVEN THOUGH THAT MONEY WAS COMING VIA
THE FTC, THAT IF IT DIDN'T COME FROM VIA THE FTC, IT HAD TO
COME FROM SOMEWHERE ELSE FROM LIFELOCK.  SO THAT WAS ONE
PROVISION THAT WE PUT IN THE SETTLEMENT AGREEMENT TO MAKE SURE.

        AND WE ARE ALSO ABLE TO THEN SEPARATE OUT FEES AND
GET MORE FOR THE CLASS.  IN THAT NEGOTIATION, I SAID, YOU KNOW,
WE DID NOT RAMP DOWN THE AMOUNT OF MONEY TO SET OFF THE FEE
EXPOSURE.

**THE COURT:** ALL RIGHT. THAT WAS THE ONLY QUESTION I HAD.

MS. SACKS, DO YOU HAVE ANY POINTS YOU'D LIKE TO MAKE?

**MS. SACKS:** YOUR HONOR, I HAVE FURTHER RESPONSES TO THE OBJECTIONS. UNLESS THERE'S SOMETHING THAT YOU HAVE A QUESTION ABOUT OF THE OBJECTIONS OR UNLESS MR. SHERWOOD ADDS TO WHAT WAS ALREADY PRESENTED TO THE COURT, I DON'T HAVE ANYTHING SPECIFIC TO SAY.

I GUESS THE ONE THING I WOULD RESPOND TO IS THE ARGUMENT THAT, TO THE EXTENT THAT THE FEE AWARD IS ANYTHING LESS THAN WHAT COUNSEL HAVE ASKED FOR HERE ON THE ARGUMENTS THAT HAVE BEEN MADE BY THE OBJECTORS ARE COMPLETELY UNFOUNDED. THEY BASICALLY DESCRIBE IT AS IF A REDUCED FEE AWARD TO COUNSEL WOULD BE SOME KIND OF A WINDFALL TO LIFELOCK.

AND I THINK AS COUNSEL JUST EXPLAINED, WHEN WE NEGOTIATED THE MOU SETTLEMENT AT A TIME WHEN THE FTC ACTION WAS THE SUBJECT OF VIGOROUS LITIGATION, VERY CONTESTED LITIGATION, THE NOTION WAS THAT LIFELOCK'S FULL EXPENDITURE HERE WOULD BE $68 MILLION. THAT $68 MILLION WOULD BE SHARED BETWEEN COUNSEL. IT WOULD PAY THE COST OF THE CLAIMS ADMINISTRATION. AND THE REMAINDER WOULD BE SHARED AMONG THE CLASS.

IT WAS ONLY SUBSEQUENTLY IN ORDER TO ACHIEVE, FROM LIFELOCK'S PERSPECTIVE, A GLOBAL RELEASE THAT INCLUDED THE FTC THAT LIFELOCK AGREED TO TACK AN ADDITIONAL EQUIVALENT OF ALMOST $13 MILLION ON, MEANING THE FEE THAT WAS REQUESTED AS WELL AS

AN ADDITIONAL $2.8 MILLION IN CLAIMS ADMINISTRATION.

SO, IN EFFECT, THE CLASS HAS ALREADY GOTTEN THE BENEFIT OF LIFELOCK PAYING A REDUCED ATTORNEY FEE IN THE SUM TOTAL OF 10.2 MILLION. SO TO THE EXTENT THAT THERE'S BEEN ANY DISCUSSION THAT THERE'S SOME POTENTIAL KICKBACK TO LIFELOCK HERE, IT SIMPLY DOESN'T APPLY IN THIS CASE, YOUR HONOR.

IF YOU HAVE ANY OTHER QUESTIONS, I'M HAPPY TO ANSWER THEM.

**THE COURT:** ALL RIGHT. I DON'T.

**MR. SOBOL:** I WOULD JUST REPLY BY EMPHASIZING -- AND I DON'T THINK THAT WE HAVE DISAGREEMENT ON THIS -- THE SETTLEMENT BEFORE YOU FOR APPROVAL, THE CLASS SETTLEMENT BEFORE YOU FOR APPROVAL, IS APPROXIMATELY $81 MILLION IN VALUE. THAT'S ALL COMING FROM LIFELOCK ONE WAY OR ANOTHER.

TO THE EXTENT THAT THERE'S A REDUCTION IN THE REQUESTED FEE, IT GOES BACK TO LIFELOCK. NOW, WHETHER ONE CAN QUALIFY THAT AS A WINDFALL OR NOT, THAT'S ANOTHER ISSUE, I SUPPOSE, BUT THE SETTLEMENT THAT WE ENDED UP WITH, GIVEN THE CHANGED CIRCUMSTANCES FROM THE MOU TO THE FINAL SETTLEMENT IS FOR THE FULL 81 MILLION AND CHANGE AMOUNT.

**MS. SACKS:** AND IF I MAY JUST ADD ONE THING? THERE IS AN ELEMENT TO THE SETTLEMENT -- THERE IS A BENEFIT TO THE CLASS THAT GOES FAR BEYOND THE ACTUAL CASH COMPONENT, YOUR HONOR, AND THAT IS THE QUICK-PAY PROVISION WHICH COUNSEL NEGOTIATED FOR.

YOU'LL OFTEN SEE QUICK-PAY PROVISIONS IN CLASS ACTION
SETTLEMENTS WHERE THE QUICK-PAY IS ONLY OF THE ATTORNEYS' FEES
AWARD.  HERE QUICK-PAY INCLUDES ALSO THE CLASS BENEFITS.

SO TO THE EXTENT THAT THERE IS AN APPEAL THAT THAT IS
FILED, NONETHELESS, THAT MONEY GETS DISTRIBUTED TO THE CLASS
MEMBERS, AND THAT HAS A VERY, VERY TANGIBLE AND VERY
SUBSTANTIAL BENEFIT, AS OPPOSED TO POTENTIALLY SITTING AND
WAITING FOR TWO YEARS TO GET ANY MONEY.

**THE COURT:**  WHAT ARE THE TERMS OF THE QUICK-PAY
PROVISION?  WHAT DOES THAT MEAN?

**MS. SACKS:**  SO, YOUR HONOR, WITHIN -- UPON FINAL
APPROVAL BY THE COURT, THE ENTIRE $68 MILLION TO THE CLASS,
PLUS ANY AMOUNT YOUR HONOR AWARDS FOR ATTORNEYS' FEES, MUST BE
DISTRIBUTED.  SO THERE'S $68 MILLION SITTING IN AN ESCROW
ACCOUNT RIGHT NOW THAT THE SETTLEMENT ADMINISTRATOR HAS, AND
THEN THERE WOULD BE A SEPARATE PAYMENT BY LIFELOCK OF WHATEVER
THE ATTORNEYS' FEES AWARD IS, AND THAT IS TO BE DONE WITHIN 21
DAYS AFTER FINAL APPROVAL.

**THE COURT:**  ALL RIGHT.

**MS. SACKS:**  THANK YOU, YOUR HONOR.

**THE COURT:**  THANK YOU.

ALL RIGHT, MR. SHERWOOD, I'LL HEAR FROM YOU.  I
OBVIOUSLY HAVE REVIEWED YOUR PAPERS, SO I DON'T NEED YOU TO
REPEAT THOSE.  BUT TO THE EXTENT YOU HAVE ANYTHING TO AUGMENT
THE ARGUMENTS IN YOUR PAPERS, I WILL ALLOW YOU TO BE BRIEFLY

HEARD.

     **MR. SHERWOOD:** THANK YOU VERY MUCH, YOUR HONOR. I
WILL TRY TO BE BRIEF. THERE ARE SOME STATISTICAL FACTS I WANT
TO RUN BY THE COURT.

     OF COURSE, THE COURT IS AWARE I'M REPRESENTING THREE
OBJECTORS HERE TODAY. TWO OF MY OBJECTORS ARE FROM TEXAS, ONE
IS FROM FLORIDA. WE UNDERSTAND THAT THERE ARE 6.8 MILLION
CLASS MEMBERS AND WE'RE DEALING WITH A 68 MILLION-DOLLAR FUND
THAT WAS BASICALLY SECURED THROUGH THE FTC.

     IN THE ARIZONA CASE THAT THE FTC WAS INVOLVED IN, THE
DISTRICT COURT PERMANENTLY ENJOINED LIFELOCK FROM INTER ALIA,
QUOTE:

     "MISREPRESENTING IN ANY MANNER,
EXPRESSLY OR BY IMPLICATION, THE MEANS,
METHODS, PROCEDURES, EFFECTS, EFFECTIVENESS,
COVERAGE OR SCOPE,"
UNQUOTE. ...OF ITS IDENTITY THEFT PROTECTION
SERVICE. THAT'S SECTION 1(A)(5) FROM, QUOTE.

     "MISREPRESENTING IN ANY MANNER,
EXPRESSLY OR BY IMPLICATION, THE MANNER OR
EXTENT TO WHICH THEY MAINTAIN AND PROTECT THE
PRIVACY, CONFIDENTIALITY, OR SECURITY OF ANY
PERSONAL INFORMATION COLLECTED FROM OR ABOUT
THE CONSUMERS IN THIS EXCEPTION 1(B)."
THE PERMANENT INJUNCTION REQUIRES LIFELOCK TO, QUOTE:

"ESTABLISH AND IMPLEMENT AND

THEREAFTER MAINTAIN A COMPREHENSIVE

INFORMATION SECURITY PROGRAM."

THAT'S SECTION 2.  AND --

**THE COURT:**  MR. SHERWOOD, LET ME STOP YOU.  WE DON'T
NEED TO READ INTO THE RECORD THE FTC SETTLEMENT.

WHAT ARE YOUR OBJECTIONS TO THIS SETTLEMENT THAT
YOU'VE NOT ARTICULATED IN YOUR PAPERS?

**MR. SHERWOOD:**  VERY WELL, YOUR HONOR.  I'M JUST
TRYING TO MAKE SURE I ESTABLISH A CLEAR RECORD OF WHERE OUR
OBJECTION IS COMING FROM HERE.

ON ITS FACE IT LOOKS LIKE THEY JUST ARBITRARILY
MULTIPLIED THE NUMBER OF CLASS ACTION MEMBERS TO REACH A
SETTLEMENT.  WE WANT THE COURT TO BE AWARE OF THE FACT THAT
LIFELOCK CHARGES $9.99 A MONTH FOR ITS BASIC SERVICE.

IF I'M UNDERSTANDING THE SETTLEMENT CORRECTLY, THE
CLASS MEMBERS ARE GOING TO GET EITHER 20 OR SLIGHTLY LESS THAN
$40.  6.8 MILLION CLASS MEMBERS PAID AT LEAST $68 MILLION PER
MONTH.  LIFELOCK MADE AT LEAST $896,000,000 FROM THIS CLASS.

BECAUSE THIS CLASS ACTION DEALS WITH A 5-1/2 YEAR
TIME FRAME, FROM SEPTEMBER 2010 TO JANUARY 2016, YOU CAN
MULTIPLY THE $896 MILLION TIMES 5, AND WE CONCLUDE THAT
LIFELOCK'S WRONGFUL BEHAVIOR RESULTED IN THE COMPANY RECEIVING
ABOUT 4-1/2 BILLION DOLLARS FROM THIS CLASS.

THE PROPOSED ATTORNEY FEE AWARD IS UNREASONABLE.  THE

AMOUNT OF RECOVERY OBTAINED ON BEHALF OF THE CLASS IS
UNREASONABLE CONSIDERING HOW MUCH MONEY WAS COLLECTED FROM THIS
CLASS.  CLASS COUNSEL IS REQUESTING ATTORNEY FEES AND EXPENSES
UP TO 10 -- WELL, IT SOUNDS LIKE UP TO 13 MILLION.

        WE BELIEVE FROM HEARING THE COURT THIS MORNING --
THIS AFTERNOON THAT THE COURT IS WELL AWARE THAT THIS MONEY WAS
SECURED BY THE FTC AS PART OF AN AGREED CONTEMPT PAYMENT FOR
LIFELOCK'S VIOLATION OF THE 2010 ARIZONA U.S. DISTRICT COURT
ORDER.

        THE OBJECTORS DON'T UNDERSTAND HOW ALL OF THIS CAN BE
TAKEN INTO ACCOUNT AND STILL JUSTIFY THE FEE THAT'S BEING
REQUESTED HERE TODAY.

        I THANK THE COURT FOR YOUR TIME AND CONSIDERATION OF
OUR OBJECTIONS.  MY CLIENTS, THE PIAZZAS AND MS. HINOJOSA, WISH
TO ADOPT ALL WELL-TAKEN OBJECTIONS THAT ARE NOT IN CONFLICT
WITH PREVIOUS -- THEIR PREVIOUSLY FILED OBJECTIONS.

        THANK YOU FOR HEARING US, YOUR HONOR.

        **THE COURT:**  ALL RIGHT.  YOU'RE WELCOME.  I'M PREPARED
TO TAKE IT UNDER SUBMISSION, AND I'LL ISSUE A RULING AS QUICKLY
AS I CAN.  IN THE MEANTIME NO FURTHER FILINGS ARE REQUIRED
OTHER THAN THE SUPPLEMENTAL LIST INCLUDING THE FOUR NEW
OPT-OUTS.

        **MS. SACKS:**  (INAUDIBLE).

        **THE COURT:**  YOU MAY.

        **MS. SACKS:**  YOU MAY RECALL FROM THE PRELIMINARY

APPROVAL HEARING, YOUR HONOR, WE ARE ACTING UNDER TIME
CONSTRAINTS WITH REGARD TO THE FTC AGREEMENT, AND SO,
BASICALLY, FROM THE FTC'S PERSPECTIVE A FINAL APPROVAL ORDER
NEEDS TO BE IN PLACE IN THIS CASE PRIOR TO OCTOBER 4TH, 2015 IN
ORDER FOR THOSE FUNDS OF $68 MILLION TO STILL BE AVAILABLE.

      I KNOW HOW BUSY THE COURT'S DOCKET IS.  I JUST
THOUGHT IT MIGHT BE HELPFUL TO UNDERSTAND THAT THAT'S THE
BOUNDARIES THAT WE'RE WORKING UNDER.

         **THE COURT:**  ALL RIGHT.  THAT'S HELPFUL.

         **MR. SOBOL:**  THANK YOU, YOUR HONOR.

         **THE COURT:**  THANK YOU.

         (PROCEEDINGS ADJOURNED AT 2:35 P.M.)

## **CERTIFICATE OF TRANSCRIBER**

    I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE ABOVE MATTER.

    I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

JOAN MARIE COLUMBINI

JUNE 28, 2016